235 F.2d 565
 The UNITED STATES NATIONAL BANK OF PORTLAND, OREGON, Trustee, and Walter G. E. Smith, Appellants,
v.
FABRI-VALVE COMPANY OF AMERICA, a corporation, Appellee.
FABRI-VALVE COMPANY OF AMERICA, a corporation, Appellant,
v.
The UNITED STATES NATIONAL BANK OF PORTLAND, OREGON, Trustee, and Walter G. E. Smith, Appellees.
 No. 14422.
 United States Court of Appeals Ninth Circuit.
 June 14, 1956.
 
 Cook & Schermerhorn, Harold L. Cook, Arthur S. Vosburg, Portland, Or., for appellants.
 W. B. Shively, Elmer A. Buckhorn & Orme E. Cheatham, Portland, Or., for appellee.
 Before HEALY, POPE and CHAMBERS, Circuit Judges.
 CHAMBERS, Circuit Judge.
 
 
 1
 An action alleging patent infringement was brought in October, 1950, in the United States District Court for the District of Oregon by the United States National Bank, trustee of letters patent No. 2,001,271, and Walter G. E. Smith, original patentee, against Fabri-Valve Company of America, hereafter defendant.
 
 
 2
 The gate-valve patent in issue was granted to Walter G. E. Smith on May 14, 1935. On December 17, 1935, Smith assigned all interest in the patent to his wife, to be held in trust for their children. Upon the death of the wife, the United States National Bank qualified as successor. The patent expired in its ordinary course on May 14, 1952.
 
 
 3
 On April 1, 1938, an exclusive license was granted by the bank to Crane, Ltd., of Canada, to manufacture, use and sell in Canada, the patented gate valve for a royalty of five per cent of the manufacturer's selling price of the valve. On August 9, 1939, an exclusive license was granted to Crane Company of Illinois to manufacture, use and sell (except in the eleven western states) the patented gate valve for a royalty of five per cent.
 
 
 4
 On December 4, 1945, Western Machinery Corporation was given the exclusive license to manufacture, use and sell the patented valves in the eleven western states. The royalty was twelve and one-half per cent of the selling price of the valves. Of the royalty, five per cent was for the use of the patent and seven and one-half per cent was for the rental of the patterns, drawings and specifications belonging to Walter G. E. Smith. This was also assigned to the United States Bank.
 
 
 5
 On April 13, 1950, the plaintiffs, Smith and the bank, notified the defendant, Fabri-Valve Company of America, that the valves they were producing infringed on the Smith patent. This action followed.
 
 
 6
 The validity of the patent was not in issue in the trial court. Both parties assume it is valid.
 
 
 7
 Two different types of valves manufactured by defendant are charged with infringement. One is a bonnet type, "A", and the other the bonnetless type, "B". In view of the conclusions herein and the similarity of the valves, the two types of valves will not generally be discussed separately. The sole issues on appeal are infringement and the amount of damages. Both sides have appealed from a judgment in favor of the plaintiff.
 
 
 8
 The Smith patent, No. 2,001,271, relates to a gate valve used in controlling the flow of pulp stock in a pulp mill. The Smith valve has a highly desirable quality in that its construction makes it self-cleaning and prevents clogging. Pulp stock consists of fibers of wood separated by treating wood chips in a digester at high pressures in the presence of an acid. The individual fibers are from a sixteenth to an eighth of an inch in length. A slurry is made of these wood fibers and water. This mixture is conveyed through pipelines in the pulp mill. Clogging problems arise in the course of using valves to control the flow of the mixture. Wood fibers will pile up in the ordinary valve and cling to the valve seat, thus jamming the valve when an attempt is made to close it. A leaky valve will allow the water content of the slurry to escape, leaving a residue of glue-like wood fibers that tend to cement the valve closed. The two valves of the defendant, like the Smith valve, achieved the highly desired quality of being good self-cleaners.
 
 
 9
 Smith achieved self-cleansing by constructing a valve which has a gate that slides up and down within grooves recessed in the walls of the housing. The lower edge of the gate is beveled on the upstream or inlet side. The straight bottom edge of the gate descends to the flat bottom of the inside of the valve housing on the inlet side. On the downstream or outlet side of the valve the floor of the housing is not flat but "V" shaped. The lower point of this "V" is slightly higher than the floor on the upstream side of the housing. The "seat" for the valve is the vertical surface against which the gate is pressed (when closed or partially closed) by the slurry pressing from the inlet side.
 
 
 10
 Similarly the two accused gate valves of Fabri-Valve involve a sliding up and down gate. The accused valves on the leading or downward edge involve the use of the "U" shape, instead of a "V" in the bottom of the housing.
 
 
 11
 The alleged infringements involve several claims of the Smith patent with respect to the side grooves in the gate slides and also the shape and design of the bottom portion of the housing at the gate site as the structure changes from inlet to outlet.
 
 
 12
 Very close fact questions are presented. Due to the circumstance that the Smith patent expired before the determination of the case in district court, it does not appear necessary to extensively detail this court's analysis of the devices and the respective contentions of the parties. The case is important to the parties but rests on facts that can have no value as precedent.
 
 
 13
 The district court held there was no infringement of the Smith patent claims concerning the groove structure holding the gate in its vertical ascent and descent. While the question was close, we think the court's conclusion was correct. But the district court found an infringement of the Smith patent claim involving the use of the "U" shaped bottom of the housing in the accused devices as contrasted with the "V" structure in the bottom of the outlet side of the Smith valve. It seems very clear in the "B" type accused valve, where the outlet side of the housing sits at a higher level in the bottom of the "U" than the inlet level, that the defendant invaded Smith's claim. We think the same infringement is found in the accused type "A", although it is not quite as clear. We believe, in short, the defendant's assertion of noninfringement must be reduced to a claim that a "U" is different from a "V". Here we hold functionally they were the same. Accordingly, we shall not disturb the findings of the trial court.
 
 
 14
 It is contended by the plaintiffs that one and one-half per cent of defendant's gross sales as a reasonable royalty is erroneous in that it does not equal the established royalties of five per cent. The controlling statute is 35 U.S.C.A. § 284, which reads:
 
 
 15
 "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
 
 
 16
 "When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.
 
 
 17
 "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."
 
 
 18
 As a general rule the primary method of assessing damages for infringement of a patent is using the claimant's established royalties as a measure of those damages. Clark v. Wooster, 119 U.S. 322, 7 S.Ct. 217, 30 L.Ed. 392; Seymour v. McCormick, 16 How. 480, 57 U. S. 480, 14 L.Ed. 1024; Mayor and Aldermen and Commonalty of City of New York v. Ramson, 23 How. 487, 64 U.S. 487, 16 L.Ed. 515; Philp v. Nock, 17 Wall. 460, 84 U.S. 460, 21 L.Ed. 679; Tilghman v. Proctor, 125 U.S. 136, 8 S. Ct. 894, 31 L.Ed. 664. Muther v. United Shoe Machinery Co., D.C.Mass., 21 F.2d 773. This axiom was expressly acknowledged by the trial court in its Finding of Fact XIII. But the court said: "On the matter of damages, ordinarily the court would consider the other contracts entered into by the claimants as a proper standard upon which to determine a reasonable royalty. In this case however, in view of the facts hereinbefore set forth and the fact that the patented structure represented only a minor improvement in a highly developed art, I find that a reasonable royalty is one and one-half per cent of the total sales price of all the valves manufactured and sold by the defendants between April 13, 1950, and May 14, 1952, which according to my calculations, amounts to $2,962.16."
 
 
 19
 While every intendment must be given the district court's findings, and especially so with respect to damages, yet this court believes the damages awarded classify as clearly erroneous. Federal Rules of Civil Procedure, rule 52 (a), 28 U.S.C.A. It occurs to this court that there ought to be a very good reason to depart from the established royalty of five per cent, which is prima facie the ordinary, correct measure. The trial court characterized the improvement as a "minor improvement in a highly developed art." But it was a minor improvement that the plaintiff could sell for five per cent. If the trial court is correct and this court is correct in finding an infringement, then the judgment ought to be for at least five per cent of the defendant's sales, absent more cogent reasons for departure from the norm than seem to be present here. The royalty of one and a half per cent hardly seems to meet the demands of justice. See Reliance Construction Co. v. Hassam Paving Co., 9 Cir., 248 F. 701 and Faulkner v. Gibbs, 9 Cir., 199 F.2d 635.
 
 
 20
 Also, plaintiffs contend that additional damages should have been allowed Walter G. E. Smith, the original patentee, for the seven and one-half per cent royalties he lost under his contract with Western Machinery Corporation for the rental of his drawings, patterns and specifications of the valve. The trial court found that the United States National Bank was the owner, by mesne assignment of all right, title and interest in and to the patent in suit. The evidence clearly shows the bank was the owner of the right to recover all damages for the infringement. Inasmuch as 90 per cent of the sales of the accused valves took place in the eleven western states (the area covered by that contract), it may be assumed that this was one of the factors considered by the trial court in setting what it believed a reasonable royalty. This court on appeal is not disposed to disturb the judgment with respect to the seven and one-half per cent. As to that, it cannot say that the trial court was clearly erroneous.
 
 
 21
 The judgment is to be modified to increase the recovery to five per cent of defendant's sales. Otherwise, it is affirmed.