**MARVEL SPECIALTY COMPANY, Inc.,**
Plaintiff,

v.

**BELL HOSIERY MILLS, INC.,**
Defendant.

**Civ. No. 1863.**

United States District Court
W. D. North Carolina,
Asheville Division.

Argued Aug. 20, 1962.

Decided April 22, 1963.

Robert F. Conrad, Watson, Cole, Grindle & Watson, Washington, D. C., and Kestor Walton, Asheville, N. C., for plaintiff.

Paul B. Bell and Clifton T. Hunt, Jr., Charlotte, N. C., for defendant.

CRAVEN, Chief Judge.

Apparatus for mending hosiery is the subject of the disputed patent in this case. Simultaneously with the filing of this opinion, the court has filed detailed findings of fact and conclusions of law. Briefly summarized, this is a controversy involving validity and infringement of Brown Patent No. 2,570,637 entitled "Method of and Apparatus for Mending Hosiery" issued October 9, 1951. Plaintiff is the owner of the Brown patent and has been since its issuance. Defendant is accused of infringing the Brown patent by the use of certain mending devices purchased from Stanford Marley Distributing Company, Inc., of New York City, which company is defending this suit for the defendant Bell Hosiery Mills, Inc. By the time of trial, the issue of infringement had been narrowed to Claims 1, 2, 4 and 7, and method Claim 10. After the trial commenced, the plaintiff disclaimed method Claim 10, leaving only the apparatus claims at issue.

The defendant denies infringement of all claims and affirmatively urges invalidity of the Brown patent.

The claims at issue relate to apparatus for repairing pulled threads in knitted fabric. A pulled thread occurs in knitted fabric, such as ladies' sheer nylon hosiery, when a loop in the fabric is greatly enlarged without breaking the thread. This enlargement is brought about through the withdrawal of thread from several adjacent loops on both sides of the pulled loop, thereby resulting in the reduction in size of such adjacent loops. The enlarged loop is displaced out of the plane of the fabric while the reduced loops define a visible line which detracts from the appearance of the fabric. Prior to the Brown patent, pulled threads were mended, for the most part,

with a single needle device (fitted with a suitable handle) manipulated by the hand of an operator. This simple device will be referred to hereinafter as the Hutchison device and is the subject of Hutchison Patent No. 2,493,876.

The Brown apparatus (called "Marvel" in the record) for accomplishing this restoration of pulled threads is a mending head comprising a plurality of flexible, curved needles extending radially in a circular series from a hub mounted on a rotatable shaft. The "means for rotating the hub" is not claimed by plaintiff as part of the invention.

There are two accused devices. The Miracle device comprises a metal disc having a plurality of radially extending rigid saw tooth-shaped projections. The disc is mounted on a hub which is, in turn, mounted for rotation on a shaft.

The single blade Mend-More device comprises a single, rigid elongated blade which is eccentrically connected to a hub which is, in turn, mounted for rotation on a shaft and slidably connected to the housing which encloses such shaft.

The single needle hand device (Hutchison), the multiple needle device (Brown), the saw tooth device (Miracle), and the single blade device (Mend-More) all perform the same function during mending of striking several loops in a line one blow each as the work engaging element (or elements) passes across the fabric. The action on the pulled thread is closely similar. The results accomplished with all four devices are indistinguishable.

Work preparation is identical regardless of which one of the foregoing four devices is being used. The fabric containing the defect is placed under tension over a mending cup. This tensioning of the fabric results in the enlarged displaced loop's partially re-entering the plane of the fabric, thus creating a rather large hole in the fabric, bounded by abnormally large loops which are, in turn, bounded by reduced loops. Using any one of the four devices results in

moving the excess thread through or into the distorted loops and restoring them to normal size.

## VALIDITY

■ The asserted invalidity of plaintiff's combination apparatus patent depends upon whether it was obvious to one possessing ordinary skill in the art to piece together the combination in the same way as Brown. Neither Congress nor the courts have formulated a more precise test. Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670 (4th Cir., 1961).

■ The controversy turns upon the application to the facts of what Judge Learned Hand called a "misty" rule of law. Reiner v. I. Leon Co., 285 F.2d 501, 503, 504 (2d Cir., 1960). Such application is a process of search and comparison, and little else, and often provokes differences of opinion among judges. See: Cardozo, The Nature of the Judicial Process, 163, 165 (1960 Ed.). Where possible, the determination of obviousness must be made objectively and not on the basis of subjective speculation. Honolulu Oil Corp. v. Shelby Poultry Co., 293 F.2d 127, 131, 132 (4th Cir., 1961).

The Brown apparatus is the first machine ever devised for the correction of pulled threads in hosiery—unless the Hutchison hand implement be termed a "machine". But defendant strenuously urges that there is nothing new about a rotatable shaft, or a hub mounted thereon, or a needle, or a plurality of needles extending radially from a hub. While it is true that none of these elements are novel, the combination of them was entirely new in the industry. It is perhaps not quite correct to call this patent a "combination of known elements". There were no "known elements" in the prior art except the needle with a handle fitted to it; nor can the handle be equated with the spindle of Brown. The latter was adapted to be rotated about its longitudinal axis, which is not true of the handle operation in Hutchison.

Hutchison comes far closer to anticipation of the Brown patent than any other citation of the prior art. The result is the same (the mending of pulled threads), and the method of achieving the result is essentially similar, i. e., striking or stroking several loops in a line one blow each as the (or each) work engaging element is passed across the fabric. But the actual operation of Brown and Hutchison are different—and not simply in the means for rotating the hub, which is not claimed by Brown. The rotation of the Brown spindle and hub is not the same operation as the stroking hand operation. The work is done in a different way, although the impacting element(s) strike(s) the fabric similarly, with the same result. The claims of Brown are sufficiently narrow to be distinctive over the prior Hutchison patent, and the result achieved is that intended: validity narrowed by the distinctive claims to cover devices only substantially similar to the device described in the Brown patent.

■■ Whether the elements are old or new, the new arrangement or combination of them is an entity entirely distinct from the elements and is patentable if it either produces a new result or performs an old result in an improved manner. Amdur, Patent Fundamentals, p. 184 (1959). Brown achieves an old result, i. e., the mending of pulled threads, which had previously been achieved by Hutchison, but accomplishes this old result in a greatly improved manner and with tremendously increased efficiency. As a result of the Brown patent, the cost of mending was reduced from 70 cents to 25 cents per dozen of hose while increasing the earnings of menders and making practical the mending of long pulls. Mending pulled threads was changed from a slow hand operation to a mass production type machine operation. Ever since sheer hosiery became popular with women, the problem of pulled threads in the manufacture of it has been of importance to the industry. With the increasing use of nylon after World

War II, the problem became of greater importance.

The first effort to lease a machine embodying the Brown patent occurred in November of 1949. Within three and a half months thereafter, every major hosiery mill in the United States had taken a lease. Within approximately eight months, around 635 hosiery mills had accepted leases, comprising 90 per cent of the hosiery industry. All of this remarkable acceptance was accomplished without advertising, except for an ad run in "Women's Wear Daily" about three months after the machine was first introduced. This is indeed remarkable commercial success. The principal salesman of the machine stated that he could not recall one instance of a hosiery manufacturer who saw a demonstration of the machine and declined to accept a lease. All of the necessary parts were available to the trade for many years, yet no one prior to Brown thought to assemble the simple device which is the subject of the apparatus claims.

There was no patent literature on machines for mending pulled threads prior to the Brown invention. Except for Hutchison, which has already been discussed, the prior art citations are in fields far removed from the mending of knitted fabrics and particularly sheer nylon hosiery.

It is thought unnecessary to explain in great detail the application of the other prior art citations. Defendant's own expert admitted that it would be absurd to attempt to mend a pulled thread in hosiery on a machine built according to German Patent No. 23,334 of 1883 (an apparatus for smoothing woven fabrics), and that it would be impractical to modify such a machine so that it could do so. Woodhead Patent No. 2,084,367 relates to apparatus for pre-shrinking cloth and is likewise not anticipatory of the Brown device. Other prior art ranges from auto wheels to rug beaters and simply establish that it is old to fix a hub upon a spindle and superimpose a circular series of self-sustaining work engaging elements. By no stretch of the imagination could any machine built according to any prior patent be modified and adapted to mending pulled threads in a knitted fabric.

■■ Entirely aside from commercial success, which may properly be considered in a close case, defendant has failed to sustain its burden of overcoming the presumption of validity. The Brown patent is valid.

### INFRINGEMENT

Infringement is the more difficult problem. In its initial pleading, the defendant admitted that the Miracle machine infringed the Brown patent. Subsequently, it amended its answer to take the position that although the apparatus claims literally described the Miracle machine, it was, nevertheless, not an infringement because the Miracle machine does not perform the same function as the patented apparatus. This position is without merit. Over-simplifying, for the purpose of clarity, the difference between the Brown (Marvel) device and the Miracle device is simply that Miracle substitutes a plurality of radially extended rigid saw teeth for a plurality of radially extended flexible curved needles. Actually, Brown's first embodiment of his invention was a solid disc out of which he cut forks or prongs. He had difficulty with it and went on to the wire wheel type which is referred to throughout this opinion as the Brown (Marvel) device. Brown preferred the wire spokes but worked with a saw tooth disc. In any event, the claims of the Brown patent read on the Miracle saw tooth device. But defendant urges that the method is different. What defendant means by this is simply that Miracle infringes the Brown (Marvel) *device* but does not infringe the Brown *patent*, or stated differently, that the Brown (Marvel) device does not faithfully embody the Brown patent because the method claim of the Brown patent has been disclaimed leaving no other method described in the Brown patent with respect to the Brown apparatus claims. It is true that none of the machines actually

work on the knitted fabric like the Brown method Claim 10, but that claim has been disclaimed, and in any event, is not relevant to the apparatus claims contained in the Brown patent. The function of both plaintiff's Brown (Marvel) machine is precisely the same as that of the Miracle machine, and, indeed, of the Mend-More and Hutchison devices. All are used for the purpose of mending pulled threads, and have no other use or function. The Brown patent adequately describes the apparatus so that it can be made, and teaches how to use it. More (with respect to method) is not required of an apparatus patent. The Miracle machine infringes the apparatus claims of the Brown patent.

Even harder to resolve is the question of infringement by the Mend-More device. Whether to apply the doctrine of equivalents established by Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), depends upon whether the construction of the Mend-More device embodies a major change as compared with the Brown (Marvel) device. Wabash Corp. v. Ross Electric Corp., 2 Cir., 187 F.2d 577; cert. denied, 342 U.S. 820, 72 S.Ct. 38, 96 L.Ed. 620 (1951). Instead of a plurality of work engaging needles, the Mend-More device employs a single blade mounted eccentrically on a hub. The rotation of the hub is increased some ten times as compared to the Brown device, thereby getting approximately the same number of strokes or blows per minute against the fabric. The action on the fabric is closely similar, but the stroke is slightly flatter and more closely approximates the Hutchison device movement than does the Brown device. Except for the Hutchison prior art, the Graver Tank doctrine of equivalents ought perhaps to be applied to the Mend-More device, but, in view of Hutchison, the broad construction urged by plaintiff for the Brown patent cannot be allowed. To apply the doctrine of equivalents in this case would ignore the teachings of the patent, the representations upon which the claims in suit were allowed, and the representations by which the validity of the Brown patent has been sustained in the prior portion of this opinion. See: Union Carbide & Carbon Corp. v. Graver Tank & Manufacturing Co., Inc., et al., 196 F.2d 103; cert. denied, 343 U.S. 967, 72 S.Ct. 1059, 96 L.Ed. 1363; rehearing denied, 344 U.S. 849, 73 S.Ct. 6, 97 L.Ed. 660 (1952). It would be contrary to the teachings of the Brown patent and its file history to say that a single blade is the equivalent of a series of circular arranged flexible needles. Although function and result are the same, the two devices do not operate in the same way. This is emphasized by Brown's claim of novelty over the Hutchison single needle device: the circular arrangement of plural needles. Brown narrowed his claims in order to get his patent issued over Hutchison. He should not now be permitted to get through the doctrine of equivalents what he could not have obtained initially. Equivalents in the patent is not the prisoner of a formula and is not an absolute, and things equal to the same thing in this area, may not necessarily be equal to each other. Graver Tank & Mfg. Co. v. Linde Air Products Co., supra.

The claims of the Brown patent 7, 4, 2 and 1 fail to cover the Mend-More device by the very same point or points of novelty that distinguish the claims over Hutchison. Plaintiff has failed to carry the burden of proving infringement by the Mend-More device.

## COLLATERAL MATTERS

During the trial, counsel stipulated that all questions would be deemed objected to, and that all objections would be deemed waived, unless renewed in writing. Subsequently, both parties renewed their respective objections to evidence concerning the prior art single needle hand device practice.

Both objections are overruled. Nothing is to be gained by rigid adherence to technical rules of evidence in the trial of a case without a jury. See: United States v. 25,406 Acres of Land, 172 F.2d 990 (4th Cir., 1949). Although

the objections are not without merit, they go more to the weight and importance that the court ought to attach to the testimony than to competence. A few minutes' observation of the mending of hosiery by hand (which opportunity was afforded the court) reduces the problem to smaller dimensions. Hutchison teaches the stroking method of the prior hand manipulated art, and the court bases its findings with respect to this aspect of the prior art upon its own observations and the Hutchison patent. In any event, validity and infringement of the Brown patent do not turn upon the challenged evidence.

■ The defendant moves the court, pursuant to 35 U.S.C.A. § 285,[1] to award reasonable attorney fees to the defendant, contending that this is an exceptional case making appropriate such an award. But the defendant is not "the prevailing party" except as to non-infringement by the use of the Mend-More device. Even so, the alleged basis for such an award is not deemed to be sufficient. It is true that the plaintiff disclaimed the method claim of the Brown patent at the beginning of the trial, but the court is unable to find from all of the evidence that the late disclaimer was inexcusable or in bad faith. In the opinion of the court, there is no unfairness or other equitable consideration which would make it unjust that defendant bear the burden of its own attorneys fees—even if it be deemed a prevailing party. The court accepts plaintiff's explanation that disclaimer was made within five days after discovery that the method claim was erroneous. A formal disclaimer has been filed in the United States Patent Office. The court concludes that the disclaimer was filed within a reasonable time after knowledge was brought home to the plaintiff that the method Claim 10 was invalid. 35 U.S.C.A. § 253.

After trial, the defendant Bell moved the court, pursuant to 15(b) of the Federal Rules of Civil Procedure, to amend so as to allege misuse of the patent in that (1) Marvel required users to sign lease agreements forbidding the use of other pulled thread mending machines and (2) that Marvel knew or should have known that Claim 10 of the patent was invalid but did not disclaim it until the trial. The motion to amend is allowed. The allegation with respect to failure to disclaim does not require further consideration.

■■ Misuse of a patent does not invalidate it. 69 C.J.S. Patents, § 155. But courts of equity will withhold relief where the patentee and those claiming under him are using the patent privilege contrary to the public interest. Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, 383 (1944). After the issuance of the patent, only four lease agreements out of hundreds contained the forbidden clause. These were isolated instances and do not support the inference of a plan to unlawfully extend the monopoly of the patent. Moreover, even these lease agreements (and others executed before the issuance of the patent) contained a "favored nations" clause so that subsequently issued leases had the effect of removing the objectionable clause. Misuse is not established. It would not be equity to deny plaintiff relief where it appears that the use of the inserted clause is inadvertent rather than the result of a scheme to unlawfully extend the patent. Plaintiff has not used the patent privilege contrary to the public interest.

Counsel may submit an appropriate judgment.

---

1. The court, in exceptional cases, may award reasonable attorney fees to the prevailing party.