**MARVEL SPECIALTY COMPANY, Inc.,**
Appellant,

v.

**BELL HOSIERY MILLS, INC., and Stanford Marley Distributing Co., Inc.,**
Appellees.

No. 11150.

United States Court of Appeals
Fourth Circuit.

Argued May 5, 1967.

Decided Oct. 17, 1967.

Robert F. Conrad, Washington, D. C. (J. Russell Verbrycke, III, Washington, D. C., on brief), for appellant.

Paul B. Bell, Charlotte, N. C. (Joseph H. Heard and Parrott, Bell, Seltzer, Park & Heard, Charlotte, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BOREMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

In Marvel Specialty Company v. Bell Hosiery H[M]ills, Inc., 330 F.2d 164 (4 Cir. 1964), we held U. S. Patent No. 2,570,637, relating to a method and machine for repairing "pulled threads" in knitted fabrics, valid; and, at the instance of the owner of the patent which manufactured a commercial machine called the "Marvel" mender, we held that the "Miracle" and "Mend-More" machines manufactured by Stanford Marley Distributing Co., Inc. ("Stanford"), and used by Bell Hosiery Mills, Inc. ("Bell"), infringed the patent. We remanded the case to the district court for an assessment of damages. The present appeal, raising three questions in regard to damages, is from that determination.

Upon remand, the district court referred the question of damages to a Special Master, D.C., 235 F.Supp. 218. The Special Master found, and his findings of fact were modified only slightly by the district judge, that, beginning in November, 1949, plaintiff placed the Marvel mender on the market and charged $6.00 per mender per month for its use. The original marketing was before the patent issued and, after the patent issued on October 9, 1951, plaintiff did not alter the $6.00 per month per machine rental.

During the month of October, 1954, Bell obtained a Marvel mender and, on December 3, 1954, Bell, upon obtaining a second mender, entered into a lease agreement in which it agreed to pay a monthly rental of $6.00 per month per machine. On March 14, 1956, Bell exchanged one of its conventional menders for another mender having an unpatented iron attachment and, for this machine, Bell contracted to pay an additional monthly rental of $3.00 for each Marvel mender equipped with an iron attachment. Subsequently, the original second conventional mender was replaced with a second iron attachment mender and, until July 1959, Bell utilized plaintiff's machines, having as many as five at one time.

On July 6, 1959, Bell notified plaintiff that it intended to terminate its lease agreement with the plaintiff and returned the only remaining Marvel mender with iron attachment in its possession the next day.

Some eight months prior to July, 1959, Bell purchased from Stanford a Miracle mender and was using it at its plant in July, 1959. On July 14, 1959, one of plaintiff's representatives visited defendant's mill, saw the Miracle mender and a recently purchased Mend-More machine, and advised Bell that both of these machines infringed the patent. He left copies of the patent with Bell. Bell immediately communicated with Stanford, which advised Bell that a mistake had been made in shipping the Miracle mender to Bell. Stanford replaced the Miracle mender with a Mend-More machine and advised Bell that the Mend-More machine did not infringe the patent, citing the opinions of two patent lawyers in support of the statement.

From November, 1958, until October, 1964, Bell had in its possession, and used, infringing machines as follows:

|  |  | From | Until |
|---|---|---|---|
| a. | One (1) Miracle machine | Nov., 1958 | July, 1959 |
| b. | One (1) Mend-More machine | July 8, 1959 | Oct., 1964 |
| c. | One (1) Mend-More machine | Aug. 11, 1959 | Oct., 1964 |
| d. | Two (2) Mend-More machines | Aug. 18, 1959 | Oct., 1964 |
| e. | One (1) Mend-More machine | Nov. 22, 1960 | Oct., 1964 |

When the decision of the district court on infringement was announced on April 22, 1963, 216 F.Supp. 824, holding that the Miracle machine infringed the patent, but that the Mend-More machine did not, plaintiff reduced the rental for its mender to $3.50 per month (without attachment) and $5.00 per month (with attachment), but, after this Court held on April 3, 1964 that the Mend-More machine, as well as the Miracle machine, infringed the patent, plaintiff restored the initial rents of $6.00 and $9.00 per month.

In July, 1959, when Bell terminated its lease of plaintiff's menders, the standard lease agreement which plaintiff offered to the hosiery industry required payment of an installation fee of $60.00, each, for the first three machines, $55.00, each, for the next two machines, and $50.00, each, for the next five machines. These fees closely approximated plaintiff's cost of manufacture and installation of menders.

Finally, it was found that, for the period 1959 to 1964, plaintiff had an annual average percent of profit of 33.6%.

The Special Master reasoned that had Bell leased five Marvel machines from the plaintiff for a period of 304 months, at a rental of $9.00 per machine per month, Bell would have paid the plaintiff the sum of $2,736.00. The Special Master concluded that plaintiff, to recover its pecuniary loss, should recover 33.6% of said sum—$919.30—as a result of infringement. In supporting this result, the Special Master concluded that Bell had an established royalty for the conventional Marvel machine of $6.00 per month, and for an iron attachment Marvel machine of $9.00 per month, and that $919.30 was not less than a reasonable royalty within the meaning of 35 U.S.C.A. § 284. The Special Master recommended interest at the rate of 6% from the date of judgment until paid. In regard to punitive damages, the Special Master recommended that Bell be required to pay triple damages for the time that Bell used the Miracle machine. This recommended conclusion was based upon an admission of Bell's president that he realized that the Miracle and Marvel machines were quite similar, with a number of common characteristics, and, because the president did not seek the opinion of competent patent attorneys, but continued to use the Miracle device until he was informed by plaintiff's representative that it infringed the patent. With regard to the Mend-More machine, the Special Master concluded that triple damages should not be recovered, particularly in the light of the disagreement between the district court and the Court of Appeals on the issue of whether there was infringement, from which it could hardly be said that Bell deliberately and intentionally infringed the patent.

The district judge reduced the Special Master's conclusions with respect to damages. The district judge held that damages could not be computed on the basis of $9.00 per month per Miracle machine " * * * for to do so will accord to plaintiff the benefit of a patent on the iron attachment—which is not even alleged to exist." The district judge, therefore, computed plaintiff's damages on the basis of 304 machines at a rental of $6.00 per machine per month, to which the profit factor of 33.6% was applied, and damages trebled for the time that Bell used the Miracle machine.

Raised on appeal are questions of the basic measure of damages, limitation of discovery prior to the hearing on damages, and the allowance of punitive damages. We vacate the judgment entered, and direct the entry of a new judgment in accordance with the views expressed herein.

I

Before the district judge and in this Court, plaintiff contends that it is entitled to damages not on the basis of the net rental per month but on the basis of the gross rental per month. The district judge rejected this contention because he was of the view that Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U. S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), required a contrary result. In this we think the district judge erred.

Damages for infringement of a valid patent are presently fixed by 35 U.S.C.A. § 284[1] which, in pertinent part, directs the allowance of " * * * damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."[2]

3 Walker, Patents (1937 Ed.) §§ 821–823, pp. 2156–2173, summarizes the decided cases and collects the pertinent authorities on the subject of assessment of damages where there has been patent infringement. From the premise that the proper measure of recovery is the difference between the plaintiff's pecuniary condition after the infringement and what the condition would have been if that infringement had not occurred, they state that, ordinarily, the rule must be applied in one of two situations—the first, where the patentee has exercised his patent by granting licenses to others to do the things which the infringer did without a license, and the other, where the patentee has exercised his patent by keeping his patent right a close monopoly and granting licenses to no one. In the former, where the patentee has established a fixed royalty, the difference between pecuniary condition after infringement and what that condition would have been if infringement had not occurred, is the patentee's not having received the royalty which a license to the infringer would have brought him. If no fixed royalty has been established, the courts will undertake an inquiry into what is a reasonable royalty. In the latter, because there is no established royalty, the difference consists of the money he would have realized from a monopoly if there had been no infringement as, for example, the sales he would have made and the profits he would have realized, or what would have been a reasonable royalty had the patentee undertaken to grant licenses. See also, Georgia-Pacific Corp. v. United States Plywood Corp., supra, 243 F.Supp. at p. 515.

Indeed, where there is an established royalty, the Supreme Court, as early as 1886, held that the established royalty is the "best" measure of damages. Clark v. Wooster, 119 U.S. 322, 326, 7 S.Ct. 217, 30 L.Ed. 392 (1886). In this Circuit, before the 1942 amendment to 35 U.S.C.A. § 284, an established royalty was adopted as the measure of damages where proof of the infringer's profits was uncertain or unavailable. Swan Carburetor Co. v. Nash Motors Co., 133 F. 2d 562 (4 Cir. 1943).

■ It is clear, also, that it is part of the established rule where a patentee has granted licenses and has an established royalty, the *gross* royalty *with interest from the date on which it was payable*,[3] from time to time is the proper measure of the patentee's recovery. Clark v. Wooster, supra; Seymour v. McCormick, 16 How. 480, 57 U.S. 480, 489, 14 L.Ed. 1024 (1854); United States National Bank of Portland, Or. v. Fabri-Valve Company, 235 F.2d 565 (9 Cir. 1956); Swan Carburetor Co. v. Nash Motors Co., supra; Newport News Shipbuilding & Dry Dock Co. v. Isherwood, 5 F.2d 924 (4 Cir. 1925).

■ Since the purpose of the enactment of 35 U.S.C.A. § 284 was only to eliminate an infringer's profits as an element of a patentee's recovery, the rules allowing a patentee to recover his *gross* established royalty with interest from the date payment should have been

---

1. § 284 is a recodification of the 1946 basic amendment (35 U.S.C.A. § 70) to the 1870 patent code, Act of July 8, 1870, 16 Stat. 206–207.

2. As the exhaustive and persuasive opinion in Georgia-Pacific Corp. v. United States Plywood Corp., 243 F.Supp. 500, 515, et seq. (S.D.N.Y.1965), demonstrates, the predecessor of § 284 abolished, in the usual case, as an element of a patentee's damages, the profits realized by an infringer. See also, Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 505–506, 84 S.Ct. 1526, 12 L.Ed. 2d 457 (1964).

3. The legislative history of the 1946 amendment, as recited in the Aro case, supra, shows that the sponsors of the bill contemplated the allowance of interest *from the time of infringement.*

made still apply. Aro Mfg. Co. v. Convertible Top Replacement Co., supra, does not require a contrary conclusion.

The *Aro* case concerned a suit by a patentee against a contributory infringer where the direct infringer had made settlement for its infringement and had been released from further liability. Incidentally, the portion of the opinion which discussed damages had the concurrence of only four justices (one of the majority was of the view that the damage question was not ripe for decision); but, stemming from the view that the enactment of 35 U.S.C.A. § 284 abolished an infringer's profits as an element of the patentee's recovery in the usual case, these four were of the opinion that " * * * after a patentee has collected from or on behalf of a direct infringer damages sufficient to put him in the position he would have occupied had there been no infringement, he cannot thereafter collect actual damages from a person liable only for contributing to the same infringement. The principle is but an application of the rule that full satisfaction received from one tort-feasor prevents further recovery against another." Id., 377 U.S. p. 512, 84 S.Ct. p. 1545.

It is true that in *Aro* there is contained the language[4] which led the district judge to conclude that plaintiff could recover only that portion of its established royalty which constituted profit to it. But a reading of the full opinion satisfies us that this language, when viewed in context, including the facts under which the case arose, was employed to make crystal-clear that profits of the infringer were no longer an element of the patentee's damages for infringement and not to alter long-established rules which permit a patentee to recover a gross established royalty as the "best" measure of actual damages. Accord: Georgia-Pacific Corp. v. United States

Plywood Corp., supra, 243 F.Supp. at p. 515.

■ Finally, we must consider what was plaintiff's established royalty for its patented device. In the light of the findings of the Special Master concerning the $60.00 installation fee, we agree that it was no part of the established royalty and that plaintiff may not recover therefor. We agree, also, that the established royalty was $6.00 per machine per month and not $9.00. Had plaintiff elected to market its patented device only with the unpatented attachment, there would be warrant for treating $9.00 per machine per month as the established royalty. Electric Pipe Line v. Fluid Systems, 250 F.2d 697 (2 Cir. 1957). But the fact is that it did not. For a manufacturer of knitted goods, plaintiff marketed two machines, one manufactured strictly in accordance with the teachings of the patent, and the other, an "improved" model, incorporating an additional unpatented device. We agree with the district judge that the portion of the $9.00 monthly charge attributable to the unpatented attachment is not an element of plaintiff's permissible recovery.

■ We hold therefore, that plaintiff should have recovered as damages $6.00 per machine per month for the period of infringement, trebled in part as hereafter discussed, with interest from the date that royalty payments should have been made.[5] We direct the entry of judgment computed in this manner.

II

■ Prior to the trial of the damage question, plaintiff sought to take the deposition of Bell's president for purposes of discovery. Bell moved, *inter alia*, to limit the scope of inquiry so as to exclude discovery of profits gained by Bell or pecuniary advantage to Bell from use of the infringing machines. The district judge granted this portion of Bell's motion.

---

4. " * * * the statute allows the award of a reasonable royalty, or of any other recovery, only if such amount constitutes 'damages' for the infringement." Id., p. 505, 84 S.Ct. p. 1542.

5. The typical "Lease Agreement" in evidence provides for semi-annual payment of "rentals," payable in advance in July and January of each year.

In this action there was no error. In the usual case an infringer's profits are no longer an element of a patentee's damages as we have previously shown. Nor could the information sought have relevance to a reasonable royalty. There was in this case an established royalty, and inquiry should not have extended 'beyond it.

### III

We think that the district judge was correct in trebling plaintiff's damages for the period that Bell used the Miracle mender. The allowance of treble damages is largely discretionary. For the period of time that treble damages were allowed and for the period that they were denied, we find, in this record, no abuse of discretion. Treble damages for the period of time that Bell used the Miracle mender should be allowed in the recomputation of the judgment we have directed.

Vacated and remanded.