WAYNE–GOSSARD CORPORATION,
Plaintiff,

v.

MORETZ HOSIERY MILLS,
INC., Defendant.

Civ. A. No. ST–C–73–24.

United States District Court,
W. D. North Carolina,
Statesville Division.

Sept. 30, 1976.

Charles B. Park, III, W. Thad Adams, III, Parrott, Bell, Seltzer, Park & Gibson, Joseph W. Grier, Jr., Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, for plaintiff.

David Rabin, Greensboro, N. C., Richard A. Williams, Williams, Pannell & Matthews, Newton, N. C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

The Plaintiff, Wayne-Gossard Corporation, the owner and holder of Reissue Patent No. RE 26,667, brought this action against the Defendant, Moretz Hosiery Mills, Inc., for compensatory and injunctive relief for infringement of such Patent. The Court found the Patent valid and infringed by Moretz, denied its claim of intervening rights and deferred an accounting for damages. Moretz appealed and the Court of Appeals for the Fourth Circuit affirmed all phases of the judgment except as to intervening rights. The Court of Appeals, holding that intervening rights applied to narrowed reissues, remanded the case for determination by this Court of the ". . . application of the section 252 defense and the relief merited."

The Court conducted a hearing upon the questions of damages and intervening rights in Statesville during the August 1976 Term, and now enters its findings and conclusions.

In order to better understand the issues for resolution now it is necessary to recite some background facts found and established at the original trial in this Court. On June 4, 1965, Plaintiff's predecessor instituted an action against the Defendant alleging infringement of Claim 3 of the original Sarbo Patent, No. 3,059,453. The Defendant denied validity and infringement, and trial was deferred pending trial of a similar case, *Wayne Knitting Mills and the May Corporation v. Russell Hosiery Mills, Inc.,* in the Middle District of North Carolina. The District Court found the Patent valid and infringed, 274 F.Supp. 934 (M.D.N.C.1967), but on appeal the Court of Appeals held Claim 3 invalid for overclaiming and indefiniteness, 400 F.2d 964 (4th Cir. 1968). Certiorari was denied by the United States Supreme Court, 393 U.S. 1064, 89 S.Ct. 717, 21 L.Ed.2d 707 (1969). Thereafter, on March 3, 1969, the original action against the Defendant was dismissed by entry of a Stipulation of Dismissal.

On September 23, 1969, the Plaintiff obtained a Reissue Patent, RE No. 26,667, pursuant to 35 U.S.C.A. 251, and instituted a second action against Russell, entitled *Wayne-Gossard Corp. v. Russell Hosiery Mills, Inc.* The Sarbo Reissue Patent was held to be valid on August 28, 1972 by Judge Merhige, sitting by designation in the Middle District of North Carolina, and such holding was affirmed by the Court of Appeals on August 30, 1973. 483 F.2d 770 (4th Cir. 1973).

The Plaintiff instituted this action on October 3, 1973 and the Defendant answered on October 29, 1973. After the case was calendared for trial, the Defendant amended its Answer and for the first time set up a defense of intervening rights pursuant to 35 U.S.C.A. 252. This defense was considered and rejected by this Court on Motion for Summary Judgment on July 15, 1974 and was further considered and rejected at trial on July 22 *et seq.,* 1974. By Memorandum of Decision dated September 26, 1974 and filed October 1, 1974 (D.C., 384 F.Supp. 63), this Court held the Sarbo Reissue Patent to be valid and infringed by Defendant's Styles 2444, 2445, 2446, 2447, 2448, and 2480. The Court further held Defendant's Styles 22444, 22445, 22447, 22448, and 22480 do not infringe the Patent by reason of their inclusion of a reciprocated heel pocket. As to intervening rights, this Court held that the Defendant was not entitled to relief (1) because such relief was not available as a matter of law to narrowed reissues such as Sarbo and (2) because, even were such relief available to narrowed reissues, the evidence presented by the Defendant was insufficient for such finding.

On March 15, 1976, the Court of Appeals for the Fourth Circuit affirmed this Court's findings and conclusions as to validity and infringement but remanded for further hearing on the defense of intervening rights. The Court overruled this Court holding that 35 U.S.C.A. 252 has no application to narrowed reissues.

Upon full consideration of all the evidence, including the testimony of the witnesses and the documentary evidence offered by the parties at the rehearing and a review of the evidence offered at the original trial, the Court now makes the following findings as to intervening rights.

The Defendant, who was already in the foot sock manufacturing business, began the manufacture of foot socks of the type claimed by the Patent involved here in late 1964 at the request of one of its customers, J. W. Landenberger Company, of Philadelphia. The Defendant did not become aware of the original Sarbo Patent 3,059,458 until suit was filed against it by Plaintiff's predecessor on June 4, 1965. Prior to the issuance of the Sarbo Reissue Patent on September 23, 1969, the Defendant had acquired machinery capable of producing foot socks of the types which have been found in this action to infringe the Reissue Patent. The Defendant contends that during the period from late 1964 to September 23, 1969, $43,415.92 in capital expenditures were made in connection with the purchase of circular knitting machines to be converted for knitting the Moretz foot covers and for certain parts and components for knitting machines for conversions, seaming machines, dye tubs, air compressors, boarding equipment and related accessories directly attributable for producing said foot covers. Since the Defendant's records do not show that the expenditures were specifically for use in connection with Sarbo-type foot socks, the testimony of its President was offered as to which items related to the Sarbo-type foot sock portion of the business. It must be remembered that only six of the eleven accused Styles of foot socks made by the Defendant were found to infringe the Plaintiff's Patent and that the Defendant was engaging in the manufac-

ture of other foot wear not accused. The capital expenditure included the purchase of 93 Used Circular Multi-purpose Knitting Machines usable for production of reciprocated non-infringing foot socks as well as many other types of hosiery items. Much of the other equipment involved, such as seaming equipment, dyeing equipment, and inspection equipment, has been used, and all is usable, for other purposes. Further, a significant portion of such equipment has been or soon will be disposed of because of obsolescence. The evidence shows that the Multi-purpose Knitting Machine can be converted to produce the infringed items and that the total cost for such conversion ranges from $250.00 to $300.00 per machine. The evidence further shows that only 50 of the 93 machines purchased were converted, and that they may be reconverted for use in manufacturing the reciprocated non-infringing styles at a nominal cost. Such reconversion would require no parts but only some 2 to 3 hours of labor per machine. The Court finds that the cost of reconversion would not exceed $30.00 per machine.

Throughout the period in question, and until about 1973, the Defendant depreciated its capital equipment using the double-declining balance method of depreciation, and thus most of such equipment purchased prior to the date of reissue (September 23, 1969), had been substantially depreciated at the time of the trial in this Court.

The Defendant's President testified that additional expenditures were made in connection with the commencement and expansion of the foot sock portion of the Defendant's business. Although there are no records of such expenditures, he estimated them to be about equal to the capitalized expenditure shown on the records. Such expenditures include, for example, an estimate of the portion of building rent, had the building been rented, as well as an allocation of a portion of his salary.

During the period of 1964 to 1972, substantially all of the Defendant's foot sock production was sold to or through the J. W. Landenberger Company. In the latter part

of 1972 the business relationship between Landenberger and the Defendant was terminated and the Defendant was required to seek new customers or outlets for its foot socks and its business declined to approximately 1 or 2 percent of its gross overall sales during 1973 and 1974. Since 1972, the Defendant's overall gross sales have increased, despite the decline of its sales of foot socks, and its business is now heavily concentrated in non-foot sock items, such as girls' knee-high stockings.

In 1973, the Defendant abandoned production of 5 of the 6 infringing styles of its foot socks, and substituted therefor styles with reciprocated heel pockets which this Court has found do not infringe the Sarbo Reissue Patent. The Defendant's President testified at the original trial that the new styles represented a significant improvement over the infringing styles, and that the Defendant had no intention of returning to the production of its infringing styles.

As to the sixth Style, No. 2446, the Defendant's President testified at the original trial that such style was still being made at the time and this Court enjoined its further manufacture after November 4, 1974. This Style 2446 was made on the Banner Hemphill Knitting Machines which are multiple-purpose machines and were already owned by the Defendant at the time its foot sock production was commenced in 1964. These machines have since been changed to the manufacture of non-infringing goods.

The Court, after consideration of all the evidence and arguments of counsel, now makes the following findings as to damages for infringement of the Patent.

■ Since there ·has been no showing by the Plaintiff of any lost sales of Sarbo foot socks as a direct result of the Defendant's infringement, damages must be measured by a reasonable royalty, together with interest and costs. 35 U.S.C.A. § 284. At the hearing on damages the Plaintiff established by the evidence and by its greater weight that four non-exclusive licenses had been granted under the Patent to foot sock manufacturers, each providing for the pay-

ment of royalties at the rate of 25 cents per dozen pairs of Sarbo foot socks sold by the licensee and had agreed in principle to another license under the same terms. See Plaintiff's Exhibits 103, 104, 105, and 114. The Court therefore finds that a royalty of 25 cents per dozen pairs sold has been established in the industry and that such royalty is reasonable and the proper figure for measuring damages in this case.

■ The relevant time period for ascertaining the amount of damages begins on September 23, 1969, the date of issuance of the Sarbo Reissue Patent, and the Plaintiff is entitled to a recovery based upon all · infringing foot socks produced and sold after that date. The Defendant's infringing foot sock production prior to such date is fully excluded from an award of damages under the first sentence of the second paragraph of 35 U.S.C.A. § 252.

The Defendant has been unable to locate any of its production records prior to June 30, 1970, but its records do show an inventory of infringing foot socks as of June 30, 1970 in the amount of 50,886 dozen pairs. The Court finds that this June 30, 1970 inventory must be considered as post-reissue production in view of the following:

1. The Defendant's President estimated the September 23, 1969 inventory to be at a level about equal to the June 30, 1970 inventory of 50,886 dozen pairs.

2. The Defendant's sales records for 1969 show sales in the last calendar quarter in the amount of 11,408 dozen pairs, thereby reducing the estimated September 1969 inventory to 38,592 dozen pairs.

3. The Defendant's sales records for the first six months of 1970 are not available. However, its records for the comparable six-month period in 1969 show sales of 96,-715 dozen pairs, and the Defendant's President testified that there was only a gradual decline in yearly sales during the years 1969–72, compared to sales of 120,318 dozen pairs in 1969. Additionally, the Defendant's Perpetual Inventory Records for the first six months of 1971 show shipments amounting to 48,598 dozen pairs.

From the foregoing, the Court finds that the Defendant's sales for the nine-month period of from September 23, 1969 to June 30, 1970, were in excess of its September 23, 1969 inventory, and accordingly, the June 30, 1970 inventory of 50,886 dozen pairs of infringing foot socks will be considered as having been produced after the date of the reissue patent and within the relevant time period.

The Defendant's Perpetual Inventory Records reflect production of the infringing styles of foot socks during the period of from June 30, 1970 to December 31, 1974, in the amount of 215,011 dozen pairs. Adding to this figure the aforementioned June 30, 1970 inventory of 50,886 dozen pairs, the Court finds that the Defendant manufactured and sold 265,897 dozen pairs of infringing foot socks during the post-reissue period.

The Defendant offered testimony that some of the entries of infringing style production on these records actually represented non-infringing style production. However, the evidence shows that the Defendant maintained separate and independent inventory records and/or entries for non-infringing styles. In view of such separate records and entries, the Court finds that production by the Defendant of infringing styles during the period is accurately reflected by the Defendant's Perpetual Inventory Records.

■ Applying the reasonable royalty rate of 25 cents per dozen pair to the total infringing foot sock production of 265,897 dozen pairs, the Court finds that the damages for infringement amount to $66,474.25. The Court further finds, in accordance with 35 U.S.C.A. § 284, that interest from the date that such royalty would have been payable must be added to the aforesaid amount. *Marvel Specialty Co. v. Bell Hosiery Mills,* 386 F.2d 287, 290 (4th Cir. 1967). The applicable rate of interest is six percent per annum. North Carolina General Statute 24–1. Applying the six percent as simple interest per annum against the royalties due for periodic production during the relevant periods, the Court finds that the sum of $16,890.91 would be due as interest and must be added to the $66,474.25 figure for a total of all damages in the sum of $83,194.16. See Plaintiff's Exhibit # 102.

■ Based upon the foregoing findings, the Court concludes that the application of the Doctrine of Intervening Rights under the second sentence of the second paragraph of 35 U.S.C.A. § 252 is discretionary, equitable in nature, and under such terms as the Court may direct. In view of the holding of the Court of Appeals that intervening rights apply to narrowed reissues and upon consideration of the evidence offered by the Defendant at the second trial, the Court concludes that said Defendant is entitled to some relief. Since much of the Defendant's documentary evidence covers its entire operation the Court finds it difficult to determine proper relief. However, after considering all the evidence and the equities presented by such evidence the Court finds and concludes that an appropriate and equitable method of determining the Defendant's relief should be based upon the cost of conversion of its Multi-purpose Circular Knitting Machines to infringing manufacture, and the cost of re-conversion to non-infringing manufacture. Giving the Defendant the benefit of the highest cost of conversion of $300.00 per machine for 50 machines and $30.00 per machine to re-convert them the Court concludes that the sum of $16,500.00 would constitute fair, just, and equitable relief for such intervening rights.

The Court further concludes that damages in the total sum of $83,194.16 for the infringement of the Plaintiff's Patent should be allowed, and that the Defendant should be given credit upon such damages for the sum of $16,500.00 as intervening rights relief, leaving a balance due the Plaintiff by the Defendant of $66,694.16.

■ The Court does not deem it equitable to permit the Defendant to continue its infringement, license free, in view of the five-year period of royalty free production which the Defendant enjoyed, and in view of the fact that the Defendant can avoid infringement with relative ease. An in-

junction shall issue enjoining the Defendant from further production of any of the infringing styles.

The attorneys for the Plaintiff shall prepare and submit to the Court, with copy to the Defendant's counsel for approval as to form, a Judgment in accordance with these findings and conclusions.