**PLASTIC CONTAINER CORPORATION,**
Plaintiff-Appellant,

v.

**CONTINENTAL PLASTICS OF OKLA-HOMA, INC., Defendant-Appellee.**

No. 77–1753.

United States Court of Appeals,
Tenth Circuit.

Argued March 12, 1979.

Decided Aug. 8, 1979.

Rehearing Denied Sept. 25, 1979.

Walter D. Ames, Watson, Cole, Grindle & Watson, Washington, D. C. (Thomas J. Greer, Jr., Diller, Brown, Ramik & White, Arlington, Va., and James A. Peabody, Oklahoma City, Okl., on the brief), for appellant.

William R. Laney, Laney, Dougherty & Hessin, Oklahoma City, Okl., for appellee.

Before BARRETT and LOGAN, Circuit Judges, and MILLER,* Judge.

MILLER, Judge.

Plastic Container Corporation ("Plastic") appeals from an adverse judgment in its patent infringement suit against Continental Plastics of Oklahoma, Inc. ("Continental"). In an order of August 5, 1977, without opinion, the district court denied Plastic's cross-motion for summary judgment, dismissed its complaint, entered judgment in favor of Continental, and awarded Continental costs and attorney fees. We reverse and remand.

*The Subject Matter of the Patent in Issue*

The infringement suit involves Reissue Patent No. 28,861 to Samuel Hall, Jr. ("Hall Reissue").[1] The Hall Reissue, obtained pursuant to 35 U.S.C. § 251,[2] is based on Patent No. 3,473,681[3] ("Hall Patent"), which was held invalid in the prior litigation of *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.,* Civil Action No. 72–825 (W.D.Okl. December 13, 1973), affirmed in an unpublished opinion of this court, No. 74–1123, October 30, 1974. The subject matter of the Hall Reissue is a container or vial employing a safety plug and a cover which snaps on and off the container. Such containers are used by pharmacists in dispensing medicaments, such as capsules or tablets, as a precaution against access by young children. Figure 1 of the Hall Reissue is illustrative of an embodiment of the claimed invention:

---

* The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. The application for reissue, entitled "Safety Medicine Bottle Closure," was filed on May 23, 1975, and issued on June 15, 1976. During prosecution of the Hall Reissue, no changes were made in the specification. However, claims 1–4 and 6–7 were cancelled; claim 5 was amended; and new claim 8 was added.

2. 35 U.S.C. § 251 reads in pertinent part:
 § 251. Reissue of defective patents
 Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

3. This patent issued October 21, 1969, on an application filed November 21, 1968.

FIG. 1

In order to remove the safety plug (internal closure 20), the external closure cap 36 (snap cover) is snapped off container 10 using abutment key 44, which depends from the side of the external closure cap. With the cap removed, the abutment key is used to remove the safety plug by inserting it into recess 28 of the safety plug and pulling the plug out. Although such manipulations are relatively simple for an adult, they are too complex for most young children. Because the abutment key serves the dual function of a key and a thumb tab, the same external closure cap may be used when there is no safety plug, thus providing the pharmacist with an option to omit the safety plug for a "non-childproof" container.

Claims 5 and 8, the only two claims that remain in the Hall Reissue, are illustrative: [4]

5. The safety container closure of claim 1 [5] wherein said external closure cap is provided with a peripheral skirt, the lowermost part of said skirt carrying said key, the interior of said skirt carrying an annular bead which snaps over a complementary bead around an outer periphery of the container opening, *whereby the key carried by the external cap functions as a tab against which the thumb is pressed in a generally upward direction to remove the external cap from the container and functions additionally as a key for cooperation with the key recess of the internal closure to thereby permit the internal closure to be removed from its position within the opening of the container.*

8. *A safety container closure assembly including,*

 *(a) a container having an opening,*

 *(b) an internal closure in the form of a plug positioned within said opening, said closure having a key recess therein,*

 *(c) an outer closure in the form of an external cap positioned over said opening,*

(b) an internal closure positioned within said opening, said closure having a key recess therein,

(c) an external cap positioned over said opening,

(d) said external cap carrying a key at a location not coincident with the location of said key recess,

(e) whereby said cap must be removed to insert the key into the key recess and thereby remove the internal closure.

---

4. The portions of the claims in italics were added to the Hall Patent during prosecution of the Hall Reissue.

5. Claim 1 (which was cancelled as an independent claim during the reissue prosecution but, nevertheless, remains incorporated into claim 5) reads:

 1. A safety container closure assembly including,

 (a) a container having an opening,

*(d) said external cap having a skirt integral therewith and depending from the top of said cap, the interior of said skirt carrying an annular bead which snaps over a complimentary bead on the outer periphery of container opening,*

*(e) a combination thumb abutment-key integral with and extending substantially horizontally outwardly from said skirt at the lower portion of the skirt, said thumb abutment-key functioning as a tab against which the thumb is pressed in a generally upwardly direction to remove the said external cap from the container and functioning additionally as a key for cooperation with the said key recess of said internal closure to thereby permit said internal closure to be removed from its position within the opening of said container.*

### Background

■ An understanding of the previous litigation involving the Hall Patent is nec-essary for consideration of the issues presented by this appeal involving the Hall Reissue. In its December 13, 1973, unpublished opinion, the district court stated the following conclusions of law: (1) Claims 1–4 and 7 are invalid under 35 U.S.C. § 102 because they "define structures which are devoid of novelty in that they are clearly anticipated by the prior art." (2) Claims 1–5 and 7 are invalid under 35 U.S.C. § 103 "as being directed to structures which lack invention and were 'obvious'." [6] (3) Claims 1–7 [7] are invalid under (the second paragraph of) 35 U.S.C. § 112 [8] because they "fail to particularly point out and distinctly claim the subject matter which the applicant regarded as his invention." The court somewhat amorphously stated that the invention is not distinctly claimed if "the dictionary meanings of the term 'coincident' are not used in construing the claims," because the specification fails "to explain or set forth the meaning" of that term. (4) Claims 1–7 are invalid for being "in contravention of the provisions of Rule 75(d)(1)," 37 C.F.R. § 1.75(d)(1),[9] because all claims

---

6. We note that, since the 1952 codification of the patent laws, patentability depends on non-obviousness under 35 U.S.C. § 103 rather than on "invention." An invention that is obvious is an unpatentable invention. *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 14–15, 86 S.Ct. 684, 692, 15 L.Ed.2d 545, 554–555, 148 U.S.P.Q. 459, 465 (1966); *In re Bergy,* 596 F.2d 952, 959, 201 U.S.P.Q. 352, 361–62 (1979); Rich, *Laying the Ghost of the "Invention" Requirement,* 1 Am.Pat.L.A.Q. 26, 40 (1972). 35 U.S.C. § 103 reads:

§ 103. Conditions for patentability; non-obvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

7. Although there are seven claims in the invalidated Hall Patent, Plastic sued for infringement on only claims 1–5 and 7. Nevertheless, some of the district court's conclusions of law apply to claim 6, because Continental, by way of counterclaim, filed a declaratory judgment action asking that all of the Hall Patent claims be held invalid.

8. 35 U.S.C. § 112 provides in pertinent part:

§ 112. Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

9. 37 C.F.R. § 1.75(d)(1) reads:

The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description. (See § 1.58(a).)

contain terms ("at a location not coincident with the location of the key recess," "coincident," and "recess") which do not find clear support or antecedent basis in the description set forth in the specification. (5) Claims 1–7 are invalid under 35 U.S.C. § 112, first paragraph, for failure to set forth the best mode of carrying out the invention ("to provide ribs on the skirt portion of the stopper or internal closure") as contemplated by the inventor at the time of filing his application.

■ On appeal, this court stated in its unpublished opinion (No. 74–1123, Oct. 30, 1974, at 7):

> We hold that the Trial Court did not err in finding that the entire patent was anticipated by the prior art. We have considered Plastic's contention raised in its reply brief that the "prior art fails to show an element that functions both as a key which enters a key recess and as a thumb abutment." We agree. However, *such an element, i. e., an abutment functioning as a key and a thumb tab, was never claimed.* [Emphasis added.]

The court discussed further testimony at trial and said (*supra* at 9):

> Applying the prior art of Velt and Mostoller, and the differences between the prior art and Claim 5, considered together with the ordinary skill in the pertinent art, we hold that the Trial Court did not err in finding '681 [Hall Patent No. 3,473,681] invalid as obvious.

Because Rule 75(d)(1) merely implements the description requirement of the first paragraph of 35 U.S.C. § 112 (*supra* note 8), we consider § 112 to be the statutory basis for this conclusion of law.

10. These allegations of error were directed at all of the district court's conclusions of law.

11. As discussed *infra,* the disposition of these other bases of invalidity in the prior appeal is important to this appeal because collateral estoppel is one of the major issues. If this court, in its previous decision, had merely affirmed on the basis of obviousness (35 U.S.C. § 103) and

## III

We have carefully considered the remaining allegations of error advanced by Plastic.[10] They are without merit.

Thus, it is clear that this court affirmed the district court in its conclusion that all claims were invalid under 35 U.S.C. § 103. The court particularly pointed out that the claims failed to recite the limitation on which Plastic relied as evidence of nonobviousness. Moreover, the statement in section III of the opinion indicates that this court intended to reject all of Plastic's allegations of error and to affirm each of the other bases for the district court's holding that the claims were invalid.[11]

Acting on the above-quoted statement in this court's previous opinion, that "an abutment functioning as a key and a thumb tab, was never obtained" in the Hall Patent, Plastic returned to the Patent and Trademark Office ("PTO") and filed an application for reissue. Following issuance of the Hall Reissue, Plastic filed this action for patent infringement against Continental.

### District Court Proceedings

In the district court,[12] Continental moved for summary judgment and requested an award of costs and attorney fees, arguing: (1) that as a result of the prior litigation between the same parties, Plastic "is barred from relief as a result of the application of one or more of the doctrines of res judicata, collateral estoppel, estoppel by record and/or law of the case"; (2) that the claims

had not disposed of the other bases of invalidity, there could be collateral estoppel only on the obviousness issue in any subsequent litigation. See *Martin v. Henley,* 452 F.2d 295, 300 (9th Cir. 1971); *International Refugee Organization v. Republic S.S. Corp.,* 189 F.2d 858, 862 (4th Cir. 1951). See generally Restatement of Judgments § 68 comment n, § 69 comment b (1942); 1B Moore's Federal Practice ¶ 0.416[2] at 2232 n.10 (1974), and cases cited therein; *id.* at ¶ 0.443[5] at 3920–22.

12. The Honorable Stephen Chandler, before whom the first trial was conducted.

of the Hall Reissue are invalid because Plastic did not discharge "the heavy duty of complete good faith, and full and open disclosure of all pertinent and material facts to the Patent Examiner during the prosecution of the reissue application"; and (3) even assuming, *arguendo,* that the Hall Reissue is infringed, Continental "is vested with certain statutorily recognized intervening rights [pursuant to 35 U.S.C. § 252[13]] which immunize" Continental. Plastic cross-moved for summary judgment: (1) on infringement because Continental had admitted that its device is readable upon both claims 5 and 8 of the Hall Reissue; and (2) on validity because reissue claims 5 and 8 are "now purged of the defect" noted in the previous Tenth Circuit opinion.

As related earlier, the district court denied Plastic's motion for summary judgment, dismissed its complaint, granted Continental's motion for summary judgment, and awarded Continental costs and attorney fees.

## OPINION

■ Because the district court did not indicate which of Continental's arguments it found persuasive,[14] this court must con-

sider each argument and, in order for the lower court's decision to be reversed, Plastic must prevail on each issue.

### (1) Collateral Estoppel Issue [15]

Continental argues that Plastic should be collaterally estopped from asserting Hall Reissue claims 5 and 8 because "these claims substantively define the same invention as did the claims involved in the first suit." It notes that "the written specifications and the drawings of both the original and reissue patents *are identical*" and suggests that the two claims issued in the Hall Reissue are identical to the claims of the Hall Patent "except for slight differences of wording." Further, Continental asserts that the basis for the Supreme Court's decision in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 U.S. P.Q. 513 (1971), was "the policy that the patentee should only be allowed one opportunity to litigate any given *issue,* unless he can show that his first opportunity was unfair procedurally, substantively or evidentially"; and that the courts have applied this policy in allowing collateral estoppel as a defense to an infringement suit based on claims which, themselves, were not previously adjudicated invalid.

13. 35 U.S.C. § 252 reads in pertinent part:

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

14. Although Plastic appears to criticize the district court for failing to specify the basis of its decision, we note that such failure is not error in view of Fed.R.Civ.P. 52(a), which states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56," and in view of the fact that Fed.R.Civ.P. 56 concerns motions for summary judgment. Nevertheless, in a case such as this which involves numerous complex legal issues, had the lower court stated its conclusions of law, no matter how briefly, time in the consideration of this appeal would have been saved; moreover, we would have the benefit of the lower court's views.

15. The courts have not been consistent in the meanings assigned to the terms "res judicata" and "collateral estoppel," as well as "estoppel by record" and "law of the case," particularly when applied to patent litigation. We choose the term "collateral estoppel" as the one most appropriate under the facts of this case.

■ Indeed, the Court in *Blonder-Tongue, supra* at 332–33, 91 S.Ct. at 1445, 169 U.S.P.Q. at 521, did speak in terms of "issues" and "questions," saying:

Moreover, we do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the *issue* in suit as the *identical question* finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." [Emphasis added; footnote omitted.]

Also, it is true that, because collateral estoppel is grounded on public policy, particularly as it relates to judicial economy, some courts have not limited its application to adjudicated claims only. *See, e. g., Westwood Chemical, Inc. v. Molded Fiber Glass Body Co.,* 498 F.2d 1115, 182 U.S.P.Q. 517 (6th Cir. 1974). The essential element of collateral estoppel is substantial identity of the issue or issues in each action. *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954); *Carter-Wallace, Inc. v. United States,* 496 F.2d 535, 204 Ct.Cl. 341, 182 U.S.P.Q. 172 (1974). Thus, the public interest in upholding valid patents, including reissued patents, outweighs the public interest underlying collateral estoppel where the issue or issues in each action are not substantially identical. *In re Russell,* 439 F.2d 1228, 58 C.C.P.A. 1081, 169 U.S.P.Q. 426 (1971); *In re Craig,* 411 F.2d 1333, 56 C.C.P.A. 1438, 162 U.S.P.Q. 157 (1969).

■ Accordingly, we agree with Continental that collateral estoppel may apply, under certain circumstances, to previously unadjudicated claims. However, it seeks to apply this defense too broadly here.[16] It is basic patent law doctrine that claims of a patent define the invention and the "metes and bounds" of the grant. *See Brenner v. Manson,* 383 U.S. 519, 534, 86 S.Ct. 1033, 1041, 16 L.Ed.2d 69, 79, 148 U.S.P.Q. 689, 695 (1966); *Deyerle v. Wright Manufacturing Co.,* 496 F.2d 45, 49, 181 U.S.P.Q. 685, 688 (6th Cir. 1974); *Citizens Trust Co. v. Lear Jet Corp.,* 403 F.2d 956, 958, 160 U.S.P.Q. 11, 13 (10th Cir. 1968), *cert. denied,* 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561, 161 U.S.P.Q. 832 (1969). Accordingly, any determination of whether collateral estoppel applies must be directed to the *claimed* invention, *i. e.,* the invention defined by the claims, rather than to a broader invention that may be disclosed in the application. As the Sixth Circuit said in *Westwood Chemical, Inc. v. Molded Fiber Glass Body Co., supra* at 1117, 182 U.S.P.Q. at 518:

[C]ollateral estoppel is available as a defense when unadjudicated claims present questions of fact identical to the questions presented in the adjudicated claims; *when each unadjudicated claim merely restates, without significant difference, an adjudicated claim; and when none of the unadjudicated claims defines an invention separate and apart from the invention defined in the adjudicated claims.* [Emphasis added.]

*Accord, Westwood Chemical, Inc. v. United States,* 525 F.2d 1367, 207 Ct.Cl. 791, 187 U.S.P.Q. 656 (1975); *In re Clark,* 522 F.2d 623, 628, 187 U.S.P.Q. 209, 213 (C.C.P.A. 1975) (Miller, J., concurring); *Bourns, Inc. v. United States,* 187 U.S.P.Q. 174 (Ct.Cl. Trial Div.1975), *opinion adopted per curiam,* 537 F.2d 486, 210 Ct.Cl. 642, 199 U.S.P.Q. 256 (1976); *see Technograph Printed Circuits, Ltd. v. Methode Electronics,* 484 F.2d 905, 908–09, 179 U.S.P.Q. 206, 208–09 (7th Cir. 1973). Moreover, unlike the above-cit-

**16.** Continental argues that "a suit on a reissue patent is barred by a prior judgment between [*sic*] the same parties holding the original patent, upon which the reissue is based, to be invalid, if the reissue patent is for the same invention as the original patent." However, this argument is in conflict with the reissue statute (35 U.S.C. § 251), which provides that the PTO shall, upon compliance with other provisions, "reissue the patent for the invention disclosed in the original patent" when "any patent is . . . deemed wholly or partly . . . invalid."

ed precedents, this appeal involves a reissue patent which the PTO has reexamined and issued, presumably after consideration of the prior art on which the original patent was held invalid.[17] Thus, to the reissued claims, a presumption of validity has attached. 35 U.S.C. § 282. Recognizing that this court's review must take into account the differences between the claimed inventions of the Hall Reissue and the Hall Patent, we now consider the holdings of invalidity in the prior litigation.[18]

### A. Obviousness under 35 U.S.C. § 103

The Court of Claims in *Westwood Chemical, Inc. v. United States, supra* at 1375,[19] indicated how, when faced with a prior holding of invalidity for obviousness, a court should determine whether the unadjudicated claims are substantially identical to the adjudicated claims:

> In approaching that question, it should be noted that, while it is convenient to refer to the "issue of patent validity," that can be misleading. Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 [148 U.S.P.Q. 459, 466–467] (1966), as a prerequisite to such a validity determination. Thus, the inquiry should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims.

. . . If they are of identical scope, it readily follows that no new issues bearing on the obviousness determination are presented. On the other hand, such a comparison may reveal some differences of a substantive nature. In that event, it will be necessary to go a step further and determine whether those differences are of a kind that would have been itemized in a *Graham* analysis as a difference between the claim and the prior art, or whether it was known in the prior art and is only a part of the claimed combination as a whole that provides the context in which the obviousness determination is made. If it is only of the latter character, *i. e.*, it is known in the prior art and does not alter the issue as to the differences between the claimed subject matter and the prior art, it is still necessary to assess the importance of the difference to the combination as a whole since it is from that standpoint that the obviousness determination must be made. [Citations omitted.]

■ The following limitation in Hall Reissue claim 5 is not found in Hall Patent claim 5:

> *whereby the key carried by the external cap functions as a tab against which the thumb is pressed in a generally upward direction to remove the external cap from the container and functions additionally as a key for cooperation with the key recess of the internal closure to thereby permit the internal closure to be removed from its position within the opening of the container.*

Claim 8, which was added as a new, independent claim during the reissue prosecution, contains comparable language directed to the dual function of the abutment as a key and a thumb tab. In the previous case, this court agreed with Plastic that such a

---

17. However, as discussed *infra*, Continental argues that there was no consideration by the PTO of the prior decision of invalidity by the district court.

18. We need not consider the holding of invalidity of Hall Patent claims 1–4 and 7 under 35 U.S.C. § 102, because those claims were can-

celled in the prosecution of the Hall Reissue; and claim 5, which was narrowed in the reissue prosecution, was not held invalid under that section.

19. Trial Judge Cooper's opinion, 186 U.S.P.Q. 383, 389 (1975), was adopted per curiam.

dual function was not shown in the cited prior art, but held Plastic's claims invalid for obviousness because of Plastic's failure to claim this dual function and to thus distinguish its claims over the prior art. From the opinion, Plastic could reasonably draw a suggestion to further limit its claims by incorporating in them this dual function feature. We are persuaded that this feature in the unadjudicated Hall Reissue claims is of such significance as to require a new analysis of these claims as prescribed by *Graham v. John Deere Co., supra.* Therefore, we conclude that the claimed invention of the Hall Reissue cannot be considered substantially identical to the claimed invention of the Hall patent for purposes of collateral estoppel.

### B. Indefiniteness under 35 U.S.C. § 112, 2d paragraph

This section requires that there be claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." It is essentially a requirement for "*precision and definiteness* of claim language." *In re Conley*, 490 F.2d 972, 180 U.S.P.Q. 454 (Cust. & Pat.App.1974); *see Hinde v. Hot Sulphur Springs, Colorado*, 482 F.2d 829, 837, 178 U.S.P.Q. 584, 588 (10th Cir. 1973). If the scope of the subject matter embraced by a claim is clear and if the applicant has not otherwise indicated that he intends the claim to be of a different scope, the claim satisfies this requirement. *In re Borkowski*, 422 F.2d 904, 909, 57 C.C.P.A. 946, 952, 164 U.S.P.Q. 642, 645–46 (1970). In other words, claims must make "clear the subject matter from which they would preclude others." *In re Hammack*, 427 F.2d 1378,

1382, 57 C.C.P.A. 1225, 1230–31, 166 U.S. P.Q. 204, 208 (1970).[20]

As related above, in the earlier district court opinion, the court concluded that the term "coincident," as used in the claims ("said external cap carrying a key at a location not coincident with the location of said key recess") is indefinite.[21] However, we conclude that any ambiguity or indefiniteness has been rectified in new claim 5.[22] With the additional claim language, it is now clear that the abutment key carried on the lowermost part of the skirt of the external closure cap is located in such a position that it can function "as a tab against which the thumb is pressed in a generally upward direction to remove the external cap from the container." Such a position is necessarily removed from the recess or aperture in the safety plug. Thus, the ambiguity found by the district court has been eliminated. Moreover, in light of the additional claim language, the statements of Plastic and its expert witness (*see supra* note 21) appear consistent.

### C. Lack of description under 35 U.S.C. § 112, 1st paragraph

To satisfy the description requirement of this section of the statute, an application must contain sufficient disclosure, expressly or inherently, to make it clear to one skilled in the art that the patentee was in possession of the claimed subject matter at the time of the filing of the application. *In re Mott*, 539 F.2d 1291, 1296–97, 190 U.S.P.Q. 536, 541 (Cust. & Pat.App.1976); *In re Smythe*, 480 F.2d 1376, 1382, 178 U.S.P.Q. 279, 284 (Cust. & Pat.App.1973). For essentially the same

---

**20.** For purposes of section 112, 2d paragraph, only the claims are examined; it is improper for a court to read the specification and *come to its own conclusion* regarding what the applicant regards as his invention. *In re Ehrreich*, 590 F.2d 902, 906–07, 200 U.S.P.Q. 504, 508 (Cust. & Pat.App.1979); *In re Borkowski, supra.*

**21.** The court, noting the dictionary definition of "coincident" as "the occupation of the same position in space," found a "manifest tendency toward ambiguity" in the quoted phrase be-

cause, in answer to an interrogatory, Plastic stated that this phrase means that "the recess is at the top of the container assembly, while the key is at the side of the container assembly"; whereas, at trial, Plastic's expert testified that the phrase means that the key is "axially offset from the key recess," employing the vertical axis of the container as the reference line.

**22.** There is no problem of indefiniteness with claim 8 since that claim does not include the term "coincident."

reasons that the language added to Hall Reissue claim 5 is sufficient to rectify any ambiguity or indefiniteness, we conclude that it enables appellant's specification to meet the description requirement of 35 U.S.C. § 112, first paragraph. We merely add that the additional claim language demonstrates the correspondence of the phrase in the claims ("at a location not coincident with the location of the key recess") with statements in the specification (column 1, lines 42–57):[23]

> The outer closure is provided with a tab or key, preferably integral therewith and which is inserted into a complementary aperture in the plug. The key is slightly rotated and is then pulled, thereby dislodging the plug. . . . Specifically, the key tab is an integral part of the outer closure to thereby preclude loss of the key. Further, it not only performs the function above described, but additionally serves as an abutment against which the thumb of the user may be placed to effect dislodgment of the closure from the container.

So, too, with the summary of the subject matter of the application in the abstract:

> A safety container closure for small plastic medicine bottles. A plug is inserted into the top or neck, in a tight friction-fit. The plug carries a key recess. An outer cap fits over the top of the container, and carries a key molded to it. The key is placed into the recess, and the plug engaged for withdrawal.

### D. Failure to disclose the best mode under 35 U.S.C. § 112

■ This section requires the application to "set forth the best mode contemplated by the inventor of carrying out his invention." Such a disclosure is calculated to insure that the public will receive the benefits intended in exchange for the grant to the patentee of limited economic privileges. *Union Carbide Corp. v. Borg-Warner Corp.*, 550 F.2d 355, 193 U.S.P.Q. 1 (6th Cir. 1977);

*Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 177 U.S.P.Q. 481 (5th Cir.), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485, 180 U.S.P.Q. 1 (1973). There is no requirement that the "best" mode disclosed in fact be the *optimum* mode of carrying out the invention. "Even if there is a better method, his [the patentee's] failure to disclose it will not invalidate his patent if he does not know of it or if he does not appreciate that it is the best method." *Benger Laboratories, Ltd. v. R. K. Laros Co.*, 209 F.Supp. 639, 644, 135 U.S.P.Q. 11, 15 (E.D.Pa.1962), *aff'd per curiam*, 317 F.2d 455, 137 U.S.P.Q. 693 (3d Cir.), *cert. denied*, 375 U.S. 833, 84 S.Ct. 69, 11 L.Ed.2d 64, 139 U.S.P.Q. 566 (1963).

■ In the previous litigation, the district court concluded that the best mode of carrying out the invention *claimed* in the Hall Patent was not set forth because the "inventor Hall knew, at the time of filing his patent application which ultimately matured to the patent here in suit, that it was of advantage to provide ribs on the skirt portion of the stopper or internal closure, and that this provided advantage over internal closures carrying no such ribs." Continental argues that, because "the specification and drawings in the reissue application, and in the application which culminated in the issuance of the original Hall patent, are identical, the documents contain identical deficiencies which were found fatal by the Trial Court in the initial litigation"; that, therefore, collateral estoppel based on the prior holding of invalidity due to failure to set forth the best mode is proper. The theory of Continental's argument is that, absent a change in the specification or drawing of the original patent during reissue prosecution, a holding that there was a failure to set forth the best mode cannot be overcome. However, this simply overlooks that it is the best mode of carrying out the *claimed* invention that must be set forth pursuant to section 112. *Dale Electronics, Inc. v. R. C. L. Electronics, Inc.*, 488 F.2d

---

**23.** It is not necessary that the language of the claims be described in haec verba in the specification in order for the description requirement

to be satisfied. *In re Smith*, 481 F.2d 910, 178 U.S.P.Q. 620 (Cust. & Pat.App.1973).

382, 389, 180 U.S.P.Q. 225, 229–30 (1st Cir. 1973) (best mode requirement was satisfied by disclosure of "a specific material that will make possible the successful reproduction of the effects claimed by [the] patent"); see Weil v. Fritz, 601 F.2d 551, 555 n.11, 202 U.S.P.Q. 447, 451 n.11 (Cust. & Pat.App.1979); Maxon v. Maxon Construction Co., 395 F.2d 330, 334–35, 158 U.S.P.Q. 77, 80 (6th Cir. 1968). The new language added to claim 5 (and incorporated in claim 8) has narrowed the scope of the claimed invention to a safety container that features an abutment on the external closure cap having the dual function of a key and a thumb tab. Whether there are ribs on the skirt of the safety plug is irrelevant to this critical feature of the Hall Reissue claimed invention. Moreover, since this feature is clearly described in appellant's specification, we conclude that the specification meets the best mode requirement of 35 U.S.C. § 112 for the Hall Reissue claimed invention,[24] and that this is so regardless of the fact that the same specification may have set forth the best mode for carrying out the invalidated Hall Patent claimed invention.

In view of the foregoing, we hold that Plastic is not collaterally estopped from asserting the validity of claims 5 and 8 of the Hall Reissue.

*(2) Issue of Fraud on the PTO*

■ In the district court proceeding, Continental argued that Plastic is precluded from enforcing the Hall Reissue because it failed to discharge "the heavy duty of complete good faith, and full and open disclosure of all pertinent and material facts to the Patent Examiner during the prosecution of the reissue application." During that prosecution, Plastic furnished the examiner with copies of the unpublished Tenth Circuit opinion of October 30, 1974, and of the prior art references cited during the course of the litigation. However, it did not submit a copy of the district court's findings of fact and conclusions of law (although it specifically referred to the district court case in the discussion of the prior art). Continental now argues (brief at 31) that this failure resulted in the reissue patent being fraudulently procured, saying:

In prosecuting its application for Reissue, Plaintiff [Plastic] misled the Patent and Trademark Office by telling the Patent Examiner that the basis for the holding of invalidity of the original patent was merely a technicality, namely that Plaintiff had failed to claim a combination key-thumb abutment. It is clear from a reading of this Court of Appeals' opinion in the prior litigation that this Court made no such "holding", and that the statement, taken from context in the appellate opinion, and upon which Plaintiff based his case for Reissue, was merely an offhanded dicta [*sic*]. Plaintiff, however, in this most deceptive fashion, told the Patent and Trademark Office only that the original patent was held invalid for anticipation, and that this Court had said that such anticipation could be avoided by adding to the claims language covering a combination key-thumb abutment.

. . . [Plastic's "misleading presentation" to the PTO] is, however, much compounded by the additional fact that *Plaintiff did not inform the Patent and*

24. *See* the portion of the specification (column 1, lines 42–57) and the abstract quoted *supra*. *See also* column 2, line 62 to column 3, line 12:

In use, with the container 10 closed or sealed as indicated at FIG. 2, when it is desired to open and obtain access to the contents, the user grasps the container in one hand and with the thumb or other finger of the other hand pushes upwardly against the bottom surface of the key tab 44. This causes the closure to undergo displacement, with the bead 42 sliding over the bead 16. After the closure 36 has been entirely removed, it is manipulated as shown at FIG. 4 so that the key tab is opposite the opening 28. After insertion as shown at FIG. 5, the closure cap 36 is rotated in a clockwise direction so that the outwardly flaring tips 49 assume a position underneath and slightly beyond the ends of slot 32. In this position, the closure 36 is now pulled and the plug 22 thus removed from the container. For replacement, the plug and top snap cap 38 are separated and the plug is first placed into position and then the cap snapped on, the bead 42 being pushed below the bead 16.

*Trademark Office that the original patent had also been held invalid on the grounds of obviousness, failure to disclose the best mode and indefiniteness.* [Emphasis in the original.]

It is true, of course, that fraud in the prosecution of a patent (sometimes referred to as "inequitable conduct" or "bad faith") will, if established, result in the patent being held invalid and/or unenforceable. *See Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381, 65 U.S.P.Q. 133 (1945); *Admiral Corp. v. Zenith Radio Corp.*, 296 F.2d 708, 716, 131 U.S.P.Q. 456, 462 (10th Cir. 1961).[25] For a defense founded on fraud to succeed, both materiality and intent must be established.

In determining materiality, the courts are not in agreement on the test to be applied. Three different tests have been used. The first is the *objective* "but for" test, *i. e.,* the misrepresentation was so material that, but for the misrepresentation, the patent not only would not have been issued but should not have been issued.[26] The second is the *subjective* "but for" test, *i. e.,* the misrepre-

sentation caused the examiner to approve the application for patent when he would not otherwise have done so.[27] Thus, the subjective test does not permit the reviewing court to conclude that, notwithstanding the misrepresentation, the patent was properly issued.[28] The third test has been labeled the "but it might have been" test, *i. e.,* the misrepresentation in the course of the patent prosecution might have influenced the examiner.[29]

Recently, this court in *True Temper Corp. v. CF&I Steel Corp.*, 601 F.2d 495, 412 U.S. P.Q. 202 (10th Cir. 1979) (hereinafter "True Temper") had occasion to consider the defense of fraud in the prosecution of a patent application and made the following statement regarding the element of materiality of fraud, 601 F.2d at 504, 202 U.S.P.Q. at 419:[30]

True Temper argues that information is material . . . only if the examiner would not have issued the patent "but for" the applicant's failure to disclose the information in question, and that this was not shown here.

possible) the subjective considerations of the examiner and the applicant. Indications in the record that the claims at issue *would* not have been allowed but for the challenged misrepresentations must not be overlooked due to any certainty on the part of the reviewing tribunal that the claimed invention, viewed objectively, *should* have been patented. If it can be determined that the claims would *not* have been allowed *but for* the misrepresentation, then the facts were material regardless of their effect on the objective question of patentability. [Footnote omitted; emphasis in original.]

25. *See also* Dunner, Gambrell & Adelman, 3A Patent Law Perspectives §§ G.1[1]–G.1[2] (1979); Miller, *Fraud on the PTO,* 58 J.Pat.Off. Soc'y 271 (1976); Kayton, Lynch & Stern, *Fraud in Patent Procurement: Genuine and Sham Charges,* 43 Geo.Wash.L.Rev. 1 (1974).

26. *Swift Chemical Co. v. Usamex Fertilizers, Inc.,* 197 U.S.P.Q. 10, 29 (E.D.La.1977); *Corning Glass Works v. Anchor Hocking Glass Corp.,* 253 F.Supp. 461, 469, 149 U.S.P.Q. 99, 106 (D.Del.1966), *modified,* 374 F.2d 473, 153 U.S.P.Q. 1 (3d Cir.), *cert. denied,* 389 U.S. 826, 88 S.Ct. 65, 19 L.Ed.2d 80, 155 U.S.P.Q. 767 (1967).

27. *American Cyanamid Co. v. FTC,* 363 F.2d 757, 150 U.S.P.Q. 135 (6th Cir. 1966); *Waterman-Bic Pen Corp. v. W. A. Sheaffer Pen. Co.,* 267 F.Supp. 849, 856, 153 U.S.P.Q. 499, 504 (D.Del.1967).

28. As the U. S. Court of Customs and Patent Appeals said in *Norton v. Curtiss,* 433 F.2d 779, 795, 57 C.C.P.A. 1384, 1405, 167 U.S.P.Q. 532, 545 (1970):

It is our view that a proper interpretation of the "materiality" element of fraud in this context must include therein consideration of factors apart from the objective patentability of the claims at issue, particularly (where

29. *Monsanto Co. v. Rohm & Haas Co.,* 456 F.2d 592, 172 U.S.P.Q. 323 (3rd Cir.), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817, 174 U.S.P.Q. 129 (1972); *Carter-Wallace Inc. v. Davis-Edwards Pharmacal Corp.,* 443 F.2d 867, 169 U.S.P.Q. 625 (2d Cir. 1971); *SCM Corp. v. Radio Corp. of America,* 318 F.Supp. 433, 449, 167 U.S.P.Q. 196, 207–08 (S.D.N.Y.1970).

30. The court (at 502) also concluded that denial of enforcement of patents rests not only on intentional fraud on the PTO, but also where "misrepresentations [are] made in an atmosphere of gross negligence as to their truth."

We feel, however, that the Fee and Sutch affidavits were clearly shown to be material to issuance of the '690 patent.[10]

[10] The Fee affidavit was submitted in an effort to overcome the Patent Examiner's initial rejection of True Temper's claims—a rejection based largely on his view that the perceptible differences between the Channeloc anchor and the pre-existing Williams patent were "of no significance and a variation in design within the realm of one skilled in the art." (IV App. 314). Although the patent was not granted immediately on receipt of that affidavit, the Examiner did state that "a showing that the [True Temper] anchor is more easily applied than prior art structures but maintains the prior art's holding character *would be influential* in the determination of patentability" (*Id.* at 326, emphasis added).

The Sutch affidavit was thereupon submitted together with remarks of counsel making reference to both the Fee and Sutch affidavits (*id.* 329, 343), and the subject patent was issued. *It is reasonable to conclude that, had he known that the reported comparisons were inherently unreliable, the Examiner would have again denied the patent—at the least requiring True Temper to conduct more meaningful tests.* [Emphasis added.]

We note that the trial judge found that "[p]laintiff failed to disclose material facts to the Patent Office and submitted evidence which was inaccurate, incomplete and misleading." And the court found "the failure of plaintiff to disclose relevant information to be substantial in nature." Although the trial judge here did not phrase his findings in strict terms of "but-for" causality, *see Norton v. Curtiss, supra,* 433 F.2d at 795, we feel that the findings and the record here adequately support the denial of enforcement of the patent. *See Timely Products Corp. v. Arron,* 523 F.2d 288, 297–98 [187 U.S.P.Q. 257, 263–64] (2d Cir. [1975]); *SCM Corp. v. Radio Corporation of America,* 318 F.Supp. 433, 449–50 [167 U.S.P.Q. 196, 207–08] (S.D.N.Y. [1970]). *The withheld information was material in that it was relevant and clearly significant to the consideration of the application by the Patent Office. See Monsanto Co. v. Rohm & Haas Co., supra,* 456 F.2d at 599–600 [172 U.S.P.Q. at 328–29]. [Emphasis added.]

The foregoing indicates that the *True Temper* court applied the subjective "but for" test and clearly did not apply the objective "but for" test. Although an argument can be made for the "but it might have been" test, we conclude that such a test is too speculative and that the more practical test is whether the examiner would have rejected the claims had he known all of the facts.[31] At the same time, the subjective "but for" test holds a patent applicant to the obligation of candor and good faith required because of the "paramount [public] interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct." *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., supra* 324 U.S. at 816, 65 S.Ct. at 998, 65 U.S.P.Q. at 138.

On the facts before us, we are not persuaded that Plastic misrepresented to the PTO the previous holding of invalidity of this court.[32] Continental's argument that this court's holding in the previous litigation was not based on a mere technicality (failure "to claim a combination key-thumb abutment") does not overcome the fact that any representation by Plastic regarding this court's opinion was subject to an independent evaluation by the examiner who, as related above, was furnished a copy of that opinion.[33]

Moreover, we are not persuaded that it was Plastic's duty, under penalty of invalidation or nonenforcement of its reissue patent for fraudulent prosecution, to provide the examiner with a copy of the district

31. The subjective test does not differ greatly from the "but it might have been" test. It looks to the *reasonable probability* that the misrepresentation caused the examiner to approve the claims; whereas the latter looks to the *possibility* that the misrepresentation would have caused the examiner to approve the claims.

32. This case is readily distinguishable from those fraudulent prosecution cases in which the existence of the relevant prior art was not even known to the examiner, who was thus denied the opportunity for an independent evaluation.

33. Continental's argument would effectively preclude an applicant from interpreting in good faith any legal precedent or any piece of prior art before the PTO.

court's decision. To the extent that the district court's findings of fact and conclusions of law were material to the prosecution of the reissue application, we regard it as decisive that the examiner was put on notice of the district court's opinion by the copy of this court's opinion and by Plastic's specific reference to the district court case during that prosecution. The examiner could readily have obtained a copy of the district court's opinion, along with the briefs, record transcript, exhibits, and other documents associated with the trial, from Plastic or from the district court itself. At the same time, the record does not disclose a reasonable probability that the examiner would have rejected the claims had a copy of the district court's findings of fact and conclusions of law been submitted to him.[34] Accordingly, we hold that the Hall Reissue was not fraudulently procured.

### (3) Intervening Rights Issue

■■■■ As related earlier, Continental argues that it has acquired intervening rights under 35 U.S.C. § 252[35] and, thus, should not be held liable for damages for infringement of the Hall Reissue claims, saying (brief at 45):

In the instant case, it would be a travesty of justice and a denial of equity to hold that the Defendant herein [Continental] should pay any damages or compensation to this Plaintiff [Plastic] on the ground that the Defendant has infringed the reissue patent of the Plaintiff, when the Defendant made and sold only the same structure after the date of issuance of the reissue patent which it had been making and selling for at least four years prior to the time that the Plaintiff obtained its reissue patent, and which structure, in fairly and fully contested litigation between these same parties, was held not to be an infringement of the Plaintiff's originally issued, subsequently held invalid patent upon which the reissue patent is based.

This raises the question of whether equity requires that Continental be allowed to continue to make, use, and sell the infringing goods "for the protection of investments made or business commenced before the grant of the reissue."[36] Section 252 is an exception to the general grant to the reissue patentee of the right to exclude others from making, using, or selling the patented invention (35 U.S.C. § 271) and, as such, may only be invoked when equity requires.

34. Because the Hall Reissue claims are significantly different from those of the Hall Patent, the necessity for making new factual determinations (such as required by *Graham v. John Deere Co., supra,* on the issue of obviousness) would have been apparent to the examiner. Consequently, it is improbable that the examiner would have attached any importance to the district court's alternative holdings of invalidity. This conclusion is reinforced by the fact that, although the examiner was fully aware that there were alternative holdings of invalidity by the district court (argued by Continental to be clear from this court's previous opinion), he did not request further information.

35. Under 35 U.S.C. § 252, quoted in pertinent part in note 13, *supra,* an infringer has the unqualified right to continue to use or sell those infringing goods which were made, purchased, or used prior to the reissue grant, unless he infringes a valid claim of the reissue patent which was in the original patent. Also, the court may provide, to the extent it deems equitable, for either the conditional or unconditional continuation of the making, using, and selling of the infringing goods or process. We

perceive Continental's argument to be directed to its continued right to make, use, and sell the infringing goods rather than its right to merely use or sell such goods made prior to the grant of the reissue.

36. In view of our decision on this question, it is unnecessary to reach such questions as: (1) whether intervening rights can apply to reissue claims which are narrower in scope than the original patent claims (*compare Corometrics Medical Systems, Inc. v. Berkeley Bio-Engineering, Inc.,* 193 U.S.P.Q. 467, 478 (N.D.Cal. 1977), *and Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.,* 384 F.Supp. 63, 74–75, 183 U.S.P.Q. 601, 609 (W.D.N.C.1974), *modified,* 539 F.2d 986, 191 U.S.P.Q. 543 (4th Cir. 1976), *with Wayne-Gossard Corp. v. Sondra, Inc.,* 434 F.Supp. 1340, 1362–63, 195 U.S.P.Q. 777, 796–97 (E.D.Pa.1977), *and Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.,* 539 F.2d 986, 990–91, 191 U.S.P.Q. 543, 546–47 (4th Cir. 1976)); (2) what, if any, effect did the prior holding of invalidity have upon Continental's intervening rights.

The district court made no findings of fact on this question, and, assuming, *arguendo,* the truth of Continental's allegations, the record is insufficient for this court to determine whether equity requires that Continental be given the right to continue to infringe the Hall Reissue claims.[37] On the basis of an affidavit of the president of Continental which was attached to its motion for summary judgment, Continental alleges that it "embarked upon an extensive market investigation, and investigation of various types of safety closure," beginning in 1970; that its first "Med-Guard" safety closures[38] were produced and sold in August 1972, as were the Continental "Med-Vials" (the medicine containers); that, "[i]n the course of the market research and product research and development, including the patenting of certain other safety closure structures, Continental Plastics expended an amount of approximately $33,000"; that, "[i]n tooling up for the initial production of the 'Med-Guard' safety closure structure,

Continental Plastics invested approximately $31,398";[39] that, in the first year of production, it invested $9,872 in advertising the "Med-Guard" safety closure structure;[40] and that, as of early 1977, its "total investment in tooling and equipment necessary to manufacture, sort and sell the 'Med-Guard' safety closure structure was $75,000."[41]

Continental seeks to continue to infringe the Hall Reissue and even expand its operations throughout the remainder of the life of the Hall Reissue without royalty fees or damages. This would effectively extinguish the patentee's rights under the guise of protecting the investment of an infringer. *See Wayne-Gossard Corp. v. Sondra, Inc., supra* at 1363, 195 U.S.P.Q. at 797. Continental's activities in the safety closure field commenced subsequent to issuance of the Hall Patent in 1969,[42] and Continental has had the benefit of several years' production for which no damages can be assessed. During that time its sales greatly

---

37. We assume the validity of the Hall Reissue claims which will be determined by the district court upon remand, as discussed *infra.*

38. The "Med-Guard" safety closure includes an internal plug which fits in the mouth of the vial and an external cap which snaps over the outside of the vial at the mouth thereof.

39. From the record, it is not clear whether all or part of this initially "tooling up" figure is included in the cost of research and development which also would have been incurred prior to initial production.

40. Advertising and sales for the subsequent four years were:

| Year | Advertising | "Med-Vial" Sales | "Med-Guard" Sales |
|------|-------------|------------------|-------------------|
| 1973 | $ 4,200.00 | $ 836,596 | $75,680 |
| 1974 | $ 3,000.00 | $ 797,567 | $63,257 |
| 1975 | $ 3,000.00 | $ 987,989 | $59,811 |
| 1976 | $17,000.00 | $1,088,153 | $49,740 |

41. It is the total investment "before the grant of the reissue" that may be protected, as equity demands; thus, any investment subsequent to June 15, 1976, is irrelevant to the consideration of intervening rights.

42. Continental has presented no evidence that its activities were conducted in reliance upon the scope of the Hall Patent claims. *See Maxon Premix Burner Co. v. Mid-Continental Products Co.,* 279 F.Supp. 164, 168, 155 U.S.P.Q. 434, 445 (N.D.Ill.1967). Absent such evidence, we need not consider the validity of Continental's argument that "a defendant who had acted upon *the belief which was well founded that the original patent issued to the plaintiff was invalid,* and had proceeded to invest large amounts in connection with the manufacture and sale of the accused device, thereby acquired intervening rights with respect to the plaintiff's reissue patent, and therefore could assert such defense against an infringement suit brought on the reissue patent." (Emphasis in original.)

increased, possibly resulting in profits sufficient to recover what appears to have been a minimal investment.[43] Cf. Wayne-Gossard Corp. v. Sondra, Inc., supra. Moreover, from the record it appears that other noninfringing goods can be manufactured from the same equipment currently being used to manufacture the infringing goods, so that not all of Continental's investment would be lost if it were precluded from infringing the Hall Reissue. Cf. Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc., 447 F.Supp. 12, 16, 199 U.S.P.Q. 87, 89–90 (W.D.N.C.1976), after remand from 539 F.2d 986, 191 U.S.P.Q. 543 (4th Cir. 1976).

In view of the foregoing and assuming the Hall Reissue is valid, we hold that Continental has not acquired intervening rights sufficient to justify continuing the manufacture of the infringing goods; nevertheless, equity requires that Continental be entitled to recoup its investment and to offset, against any infringement damages, the reasonable cost of converting or replacing its present equipment in order to produce noninfringing goods. Id. Because Continental's investments, expenditures, and recoupment through profits have not been proved with the requisite precision, and, further, because the reasonable costs of conversion have not been demonstrated, the case must be remanded for further proceedings consistent with this opinion with respect to these matters. Cf. Wayne-Gossard v. Moretz Hosiery Mills, Inc., 539 F.2d 986, 991–92, 191 U.S.P.Q. 543, 547 (4th Cir. 1976); Rohm & Haas Co. v. Chemical Insecticide Corp., 171 F.Supp. 426, 120 U.S.P.Q. 435 (D.Del.1959).

### (4) Plastic's Cross-Motion for Summary Judgment

As noted supra in the proceedings before the district court, Plastic cross-moved for summary judgment on infringement and validity. Because we conclude that the district court improperly granted Continental's motion for summary judgment, it is necessary to consider Plastic's motion.

### A. Infringement

█ In "DEFENDANT'S ANSWER TO PLAINTIFF'S REQUESTS FOR ADMISSIONS UNDER RULE 36 OF THE RULES OF CIVIL PROCEDURE," filed February 22, 1977, Continental admitted that subsequent to June 15, 1976, it made, used, and sold a container ensemble on which claims 5 and 8 of the Hall reissue can literally be read. It specifically admitted infringement of claim 8; and regarding claim 5, it said:[44]

The character of claim 5 of the reissue patent is not susceptible to precise determination or understanding. It is noted that claim 1 does not form any part of the reissue patent, and yet it is further noted that claim 5 refers to "the safety closure of claim 1 wherein", followed by a description of certain structure. It is thus not possible to determine to what structure claim 5 refers. It would appear that this claim is indefinite and incomplete on its face, and in such respect it is not possible to determine whether this claim "can literally be read" upon any container ensemble which the Defendant has made subsequent to June 15, 1976.

If claim 5 be interpreted to include all of the structural limitations from claim 1 of the original Hall patent, it is not believed that this claim can literally be read upon a container ensemble which the Defendant has made subsequent to June 15, 1976, if a key recess is interpreted to mean a hole formed through the internal closure in the manner that such recess is illustrated and described in the Reissue patent 28,861.

Further, if the structural limitations and description appearing in claim 1 of the original Hall patent be construed as incorporated into claim 5 of the reissue patent in suit, and if the second definition found in Webster's International Dictionary and the American Heritage Dictionary of the English Language be taken as

---

43. Continental's alleged investment figures include marketing research as well as expenses incurred in obtaining patents on other devices.

44. Almost verbatim admissions were made regarding use and sale of infringing containers.

the meaning of the word "coincident," then Defendant denies that claim 5 of Plaintiff's Reissue patent 28,861 can literally be read upon any container ensemble which the Defendant has made subsequent to June 15, 1976.

If the term "coincident," as used in an integrated combination of claim 1 of the original Hall patent and claim 5 of the reissue patent, means that the recess is at the top of the container assembly while the key is at the side of the container assembly, such claim cannot be literally read on any structure which the Defendant has made since June 15, 1976.

If the term "coincident" appearing in claim 1, for purposes of attempting to answer this request for admissions, is assumed to mean "alongside" as it has been previously defined by Mr. Hall, the inventor, then claim 5 cannot literally be read upon any structure which has been manufactured or sold by the Defendant since June 15, 1976.

*If the term "coincident" as used in claim 1 of the original Hall patent, assumed for purposes of attempting to answer this request for admissions to be incorporated in claim 5, means "occupying the same position simultaneously," and provided that all of the limitations of claim 1 are so incorporated in claim 5, then claim 5 of the reissue patent in suit can be literally read upon container ensembles which have been made by the Defendant since June 15, 1976.* [Emphasis added.]

Since we concluded earlier that the language added to claim 5 during the reissue prosecution corrected any ambiguity re-

garding the definition of "coincident" and that claim 1 is specifically incorporated into claim 5, it is clear that infringement of claim 5 is admitted and that the district court should have entered summary judgment for Plastic on the infringement issue.

### B. Validity

Although we already have concluded that the adjudication of obviousness in the prior litigation has no collateral estoppel effect upon Hall Reissue claims 5 and 8, the question remains whether the subject matter as a whole of these claims would have been obvious to one of ordinary skill in the art at the time the invention was made. Plastic correctly states that the Hall Reissue claims are presumed valid (35 U.S.C. § 282); and this is particularly so where the PTO considered all of the prior art before the courts in the previous litigation. *See Scaramucci v. Dresser Industries, Inc.,* 427 F.2d 1309, 1313, 165 U.S.P.Q. 759, 762–63 (10th Cir. 1970). Nevertheless, Continental should have an opportunity to show the obviousness of the Hall Reissue claims by presenting to the district court additional prior art (not before the PTO) which it considers pertinent. *See Solder Removal Co. v. United States International Trade Commission,* 582 F.2d 628, 632, 199 U.S.P.Q. 129, 133 (Cust. & Pat.App.1978). The obviousness or nonobviousness of the Hall Reissue claims can then be determined in accordance with the analytical guidelines established by the Supreme Court in *Graham v. John Deere Co., supra.*[45] We note that these guidelines do not require that, for a combination of known elements[46] to be nonobvious, the result achieved by the combination must be synergistic.[47] *Champion*

---

**45.** This court's opinion in the previous litigation merely stated that because Plastic did not claim the dual function feature of the abutment key upon which it was relying, the claims were obvious. Contrary to Plastic's assertion, that opinion did not say that if the dual function feature had been claimed, the claims would have been nonobvious.

**46.** Most, if not all, inventions involve a combination of old or known elements. *Shaw v. E.B. & A.C. Whiting Co.,* 417 F.2d 1097, 1102, 163 U.S.P.Q. 580, 584 (2d Cir. 1969), *cert. denied,* 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811,

165 U.S.P.Q. 417 (1970); *Reiner v. I. Leon Co.,* 285 F.2d 501, 503, 128 U.S.P.Q. 25, 27 (2d Cir. 1960), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388, 129 U.S.P.Q. 502 (1961).

**47.** Although the court in *True Temper, supra,* 601 F.2d at 505, 202 U.S.P.Q. at 420, correctly followed the *Graham* analytical guidelines, broad dictum in its opinion suggests, without discussion, a requirement of synergism. *See also Deere & Co. v. Hesston Corp.,* 593 F.2d 956, 963, 201 U.S.P.Q. 444, 449 (10th Cir. 1979).

*Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361, 372, 202 U.S.P.Q. 785, 793 (2d Cir. 1979); *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 970, 200 U.S.P.Q. 769, 777 (7th Cir. 1979).[48] "If the level of skill of a person of ordinary skill in the pertinent art is such that the differences between the subject matter sought to be patented and the prior art would not have been obvious to that person, the test for nonobviousness is met." *Champion Spark Plug Co. v. Gyromat Corp.*, *supra*, 603 F.2d at 372, 202 U.S.P.Q. at 793.

Accordingly, the case must be remanded for determination, consistent with this opinion, of the question of obviousness of the subject matter as a whole of Hall Reissue claims 5 and 8.[49]

### (5) Attorney Fees

In its August 5, 1977, order, the district court awarded Continental its attorney fees, apparently in accordance with 35 U.S.C. § 285, which states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Entitlement to attorney fees arises from "such misconduct upon the part of the losing party as to constitute fraud on the Patent Office or [conduct] so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel."[50]

---

**48.** The court in *Republic Industries* said (*supra* at 971, 200 U.S.P.Q. at 778):

> In enacting section 103, Congress expressly mandated nonobviousness, not synergism, as the sole test for the patentability of novel and useful inventions: indeed, synergism is not even mentioned in the Patent Act of 1952. Moreover, as section 103 applies to all patent claims, there is no justification why patentability of a combination patent should be measured by a different standard than any other type of invention.

> More importantly, when using the synergism approach to determine whether one element functions differently or whether the whole somehow exceeds the parts, one is required to look solely to the operation of the elements *after* they are combined. This analysis suffers from two defects. First, a test which looks exclusively to the functioning of the individual components after they are combined must necessarily be premised on the assumption that it is always obvious to take known elements and combine them. . . .

> The second and more basic defect with synergism is that section 103 sets as the standard of patentability the nonobviousness of the invention "at the time the invention was made to a person having ordinary skill in the art . . . ." This provision therefore compels the courts to view the invention from the vantage point of the field of art at a specific point in time, *i. e.*, the time the invention was made. *See* Rich, *Principles of Patentability*, 28 Geo.Wash.L.Rev. 393, 405–06 (1960). From this vantage point the critical question becomes whether the level of skill in the art was such that the combining of the elements in the manner claimed would have been obvious, not in retrospect, but at the time it was done by the inventor. As the Supreme Court stated in *United States v. Adams*, 383 U.S. 39, 50, 86 S.Ct. 708, 713, 15

L.Ed.2d 572 [148 U.S.P.Q. 479, 483] (1966), a companion case to *Graham:*

> It begs the question . . . to state merely that magnesium and cuprous chloride were individually known battery components. If such a combination is novel, the issue is whether bringing them together as taught by [the inventor] was obvious in the light of the prior art.

Synergism, however, precludes this analysis. Because synergism centers exclusively on the performance of the elements *after* combination and without regard to the obviousness or nonobviousness of *making the combination*, synergism does not comport with the *Graham* mandate to apply section 103.

**49.** We recognize Continental's right to raise at trial other questions regarding the validity of the Hall Reissue which have not been disposed of in this opinion.

**50.** In *True Temper, supra,* 601 F.2d at 508, 202 U.S.P.Q. 422–23, the court said:

> where the plaintiff was aware of the obvious invalidity of his patent at the time he brought suit, *Tidewater Patent Development Co. v. Kitchen*, 371 F.2d 1004, 1013 [152 U.S.P.Q. 36, 656] (4th Cir. [1966]), *cert. denied*, 389 U.S. 821, 88 S.Ct. 46, 19 L.Ed.2d 74 [155 U.S.P.Q. 768 (1967)], or where the litigation once instituted was vexatious or unduly protracted, *Uarco Incorporated v. Moore Business Forms, Inc.*, 440 F.2d 580, 586 [169 U.S.P.Q. 263] (7th Cir.), *cert. denied*, 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117 [171 U.S.P.Q. 322 (1971)], the case may be deemed "exceptional" within the statute so that the prevailing defendant is saved from the undue hardship of bearing his own fees. *See Parker v. Motorola, Inc.*, 524 F.2d 518 [188 U.S.P.Q. 225] (5th Cir. [1975]), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 [190 U.S.P.Q. 172 (1976)]; *Seismograph Service Corp.*

*Q–Panel Co. v. Newfield*, 482 F.2d 210, 211, 178 U.S.P.Q. 521, 522 (10th Cir. 1973). The award of attorney fees under section 285 is compensatory rather than punitive. *Halliburton Co. v. Dow Chemical Co.*, 514 F.2d 377, 382, 185 U.S.P.Q. 769, 773 (10th Cir. 1975). Although the award of attorney fees is discretionary with the trial court, such an award is proper only when the case is exceptional. *Id.; Iron Ore Co. of Canada v. Dow Chemical Co.*, 500 F.2d 189, 195, 182 U.S.P.Q. 520, 524 (10th Cir. 1974).

It is apparent from the record that the district court set forth no conclusion of law that this case was "exceptional" within the meaning of section 285; nor did the court make any findings of fact that would support such a conclusion.

This, coupled with our holdings and conclusions set forth above, prompts us to hold that the district court's award of attorney fees to Continental was improper.

## SUMMARY

The district court's denial of Plastic's cross-motion for summary judgment is reversed on the issue of infringement; its dismissal of Plastic's complaint and entry of summary judgment in favor of Continental are reversed; its award to Continental of attorney fees is reversed; and the case is remanded for further proceedings, consistent with this opinion, on the question of validity of the Hall Reissue and (in the event the presumption of validity of the Hall Reissue is not overcome by Continental) on the matters pertaining to Continental's intervening rights, discussed *supra*.

REVERSED and REMANDED.

Before SETH, Chief Judge, McWILLIAMS, BARRETT, DOYLE, McKAY and LOGAN, Circuit Judges, and MILLER, Judge.*

v. *Offshore Raydist, Inc.*, 263 F.2d 5 [119 U.S.P.Q. 146, *modified on rehearing*, 263 F.2d 24, 120 U.S.P.Q. 244] (5th Cir. [1959]); see also *L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818 [177 U.S.P.Q. 673] (7th Cir. [1973]).

## ORDER

Appellee Continental Plastics of Oklahoma, Inc., has filed a Petition for Rehearing with respect to this court's opinion filed August 8, 1979, which, among other matters, reversed the district court's dismissal of appellant Plastic Container Corporation's complaint and its entry of summary judgment in favor of appellee; and reversed the district court's denial of appellant's cross-motion for summary judgment on the issue of infringement.

The petition is essentially grounded on this court's statement:

Therefore, we conclude that the claimed invention of the Hall Reissue cannot be considered substantially identical to the claimed invention of the Hall patent for purposes of collateral estoppel.

Petitioner argues that appellant has made a "binding factual admission" in its brief on appeal (Intervening Rights Issue), stating:

Here . . . the scope of a reissue claim (reissue claim 5) is identical or substantially identical to the scope of an original claim (original claim 5). The only difference is the addition of a—whereby—clause.

Petitioner also points out that appellant made the same "admission" in its OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT before the district court. However, it is not apparent from the district court's order granting the motion of Continental Plastics for summary judgment that the court considered the "admission."

 Briefs are not a part of the record,[1] and in those cases in which statements in a brief were considered as admissions, it appears that the court did so as a matter of discretion. *See Leslie v. Knight Soda Fountain Co.*, 55 F.2d 224, 225 (2d Cir. 1932); *Young & Vann Supply Co. v. Gulf,*

* Of the United States Court of Customs and Patent Appeals.

1. *Cole v. Ross Coal Co.*, 150 F.Supp. 808, 809–10, and cases cited (D.C.W.Va.1957), *aff'd* 249 F.2d 600 (4th Cir. 1957).

*F. & A. Railway Co.*, 5 F.2d 421, 423 (5th Cir. 1925). Moreover, the alleged "admission" of appellant here appears to be contrary to the argument in its brief (p. 9) that—

> The claims here in issue, i. e., claims 5 and 8 of the Reissue patent, were not in issue in the prior litigation and were redrafted specifically to avoid the basis on which this Court of Appeals held original Claim 5 invalid. . . . collateral estoppel . . . does not and cannot apply to the validity of claims 5 and 8 of the Reissue patent.

■■■■ Considering that this case is on appeal from an order granting summary judgment, the court has, in furtherance of the proper administration of justice, decided the issue of collateral estoppel on the merits of the case. In its petition, appellee seeks to further argue the merits, pointing out that the language added to reissue claim 5 consists of a "whereby" clause and asserting that such a clause "*cannot* be anything more than a statement of an inherent function of the structure defined prior to the 'whereby' clause" (citing *In re Mason*, 244 F.2d 733, 735, 44 C.C.P.A. 937, 940, 114 U.S. P.Q. 127, 129 (1957)). However, *Mason* does not stand for such a broad proposition; and the idea that functional language ipso facto cannot precisely define novelty in structure was laid to rest in *In re Swinehart*, 439 F.2d 210, 58 C.C.P.A. 1027, 169 U.S.P.Q. 226 (1971).[2] It is clear that the added language in reissue claim 5, "the key carried by the external cap functions as a tab against which the thumb is pressed in a generally upward direction to remove the external cap," defines and limits structure of the key carried by the external cap so that the thumb can be pressed in an *upward* direction. Such a structural limitation is not

inherent in original claim 5 (which, *e. g.*, permits structure for a rotational or downward direction for cap removal), as urged by petitioner. *See In re Mott*, 557 F.2d 266, 194 U.S.P.Q. 305 (C.C.P.A. 1977).

In view of the foregoing, it is ORDERED:

That the petition is granted to the extent that the court has considered petitioner's arguments and, in all other respects, is hereby denied.

---

2. Footnote 4 of the opinion in *In re Swinehart* states:

> Nevertheless, we are unable to see merit in any proposition which would require the denial of a claim *solely* because of the *type* of language used to define the subject matter for which patent protection is sought. Insofar as the opinion in *In re Fisher*, 307 F. 2d 948, 50 CCPA 1025, 135 USPQ 22 (1962), cited and relied on by the Patent Office here

is inconsistent with the above statement, it will no longer be followed. Any doubt whether claims containing language such as that used in the *Fisher* case would be patentable was laid to rest last term when this court reversed the Patent Office position when the Fisher application came before us for a second time. See *In re Fisher*, 427 F. 2d 833, 57 CCPA 1099, 166 USPQ 18 (1970).